Danny KLADIS, Plaintiff-Appellant,

v.

Leonard BREZEK and David Shilling,
Defendants-Appellees.

No. 86–2473.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1987.

Decided June 10, 1987.

Richard W. Huszagh, Chicago, Ill, for plaintiff-appellant.

James R. Schirott, Charles E. Hevas, James G. Sotos & Michael W. Condon, Schirott & Associates, P.C., Itasca, Ill., for defendants-appellees.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiff, Danny Kladis, filed suit under § 1983, alleging that the defendant police officers had: arrested him without probable cause, used excessive force during the arrest, failed to inform him of the charges against him, and committed a battery against him. The jury found for the plaintiff on the failure to inform claim, and the court entered judgment accordingly. However, the court subsequently altered the judgment, and entered judgment for the defendants on the failure to inform claim. The plaintiff then brought this appeal, claiming that the district court erred in entering judgment for the defendants, incorrectly admitted certain evidence, and improperly charged the jury. We affirm.

## I.

While Danny Kladis was driving home on a rainy Christmas Eve, his car became stranded on the highway. He was discovered by Police Officers David Shilling and Leonard Brezek. The officers, believing that Kladis was intoxicated, attempted to remove him from his car. A scuffle ensued and, at some point, Kladis' arm (which had previously been injured as a result of a motorcycle accident) was fractured. The officers arrested Kladis and took him to the Riverdale, Illinois police station. The police held Kladis for approximately fifteen minutes and then released him. The officers never informed Kladis of the reasons for his arrest, and never filed any charges against him.

Kladis subsequently filed suit, under 42 U.S.C. § 1983, against Officers Brezek and Shilling. Kladis alleged that the officers had violated his constitutional rights because they had arrested him without probable cause, used excessive force during the arrest, and failed to inform him of the reasons for his arrest. Kladis also added a pendent state law battery claim. The case was tried to a jury, which found for Kladis only on his claim that the police had failed to inform him of the reasons for his arrest. The jury awarded Kladis $65,000 in damages.

Within ten days after the court entered judgment, the defendants moved for judgment n.o.v., asserting that Kladis had no constitutional right to be informed of the reasons for his arrest. Approximately four months later, the defendants moved to have the court construe their judgment n.o.v. motion as a motion to amend or alter the judgment under Federal Rule of Civil Procedure 59(e). The district court agreed to construe the motion as one under Rule 59(e), and then granted the motion.

Kladis responded by moving for a new trial. He argued that the district court had abused its discretion by granting the defendants' Rule 59(e) motion. Kladis also asserted that the district court erred in

admitting certain testimony by the defendants, and incorrectly charged the jury. The district court denied Kladis' motion, and he now appeals.

## II.

### A.

Kladis first objects to the district court's decision to consider the defendants' motion to alter the judgment. Kladis argues that the defendants were precluded from seeking judgment n.o.v. because they failed to move for a directed verdict at the close of all the evidence. Kladis further contends that the district court could not circumvent this limitation by granting the defendants' motion to recharacterize their initial judgment n.o.v. motion as a Rule 59(e) motion. Kladis asserts that the district court should have treated the defendants' motion to recharacterize as a new Rule 59(e) motion. He therefore concludes that the district court erred in considering this motion because it was not made within ten days of the entry of judgment as required by Rule 59(e). All of these contentions are incorrect.

██ Rule 50(b) appears to require that a motion for judgment n.o.v. be preceded by a motion for a directed verdict at the close of all the evidence. *See* Fed.R.Civ.P. 50(b) advisory committee note (1963 amendment). Nonetheless, we have created an exception to this rule. In *Benson v. Allphin*, 786 F.2d 268 (7th Cir.1986), we held that "something less than a formal motion for a directed verdict" suffices to preserve a party's right to seek a judgment n.o.v. based solely on a question of law. *Id.* at 274. The purpose of the directed verdict requirement, we explained, is to preserve a party's Seventh Amendment right to a jury, and to allow a party to remedy any deficiencies in its proof before the case goes to the jury. *Id.* at 273. As we noted

in *Benson*, neither of these concerns is implicated when the basis of the judgment n.o.v. motion is a pure question of law, which is outside the province of the jury. *Id.* at 274.

In this case, the defendants' motion for a judgment n.o.v. was based on their contention that the Constitution does not provide an individual the right to be informed of the reason for his or her arrest. The defendants raised this issue at the instruction conference. Because the existence of a constitutional right is a pure matter of law, we conclude that, under *Benson*, the defendants' objection at the instruction conference was sufficient to lay a foundation for their later judgment n.o.v. motion.

██ Because the defendants were entitled to have the court consider their initial motion for judgment n.o.v., it was not necessary for them to move to have that motion recharacterized as a Rule 59(e) motion. Nonetheless, the district court did not abuse its discretion in granting their motion to recharacterize the original motion. *See St. Mary's Hospital Medical Center v. Heckler*, 753 F.2d 1362, 1365 (7th Cir.), *cert. denied*, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985) (*quoting* 9 Moore's Federal Practice ¶ 204.12[1] at 4–67 (2d ed. 1980)) (" 'Any motion [made within ten days of the entry of a judgment] that calls into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.' "). Because the original judgment n.o.v. motion was made within ten days of the entry of judgment, and was therefore timely, it remained timely when recharacterized as a Rule 59(e) motion.[1]

### B.

██ Kladis next argues that the district court violated his Seventh Amendment right to a jury trial by granting the defend-

---

1. Because the motion to recharacterize the judgment n.o.v. motion was made four months after the entry of judgment, the district court could have treated it as a new Rule 60(b) motion. *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986) (Any motion made by a party more than ten days after the entry of a judgment that challenges the substance of the judgment is to be considered a Rule 60(b) motion.). Such a motion, when addressed to a purely legal question, need only be "made within a reasonable time" of the entry of judgment, Fed.R.Civ.P. 60(b).

ants' Rule 59(e) motion. Kladis notes that the court instructed the jury to find for him if it concluded that the defendants had failed to inform him of the reason for his arrest, and that the jury's verdict for him was based on this instruction. Kladis argues that if the court had not given this instruction, the jury might have found for him on one of his three other claims. He therefore concludes that by altering the judgment based on its instruction, the district court violated his Seventh Amendment right to have the jury resolve his claims. This is clearly incorrect.

The district court gave the "failure to inform" instruction at Kladis' request. Although the court expressed some reservation as to whether the Constitution provides an individual the right to be informed of the reason for his or her arrest, it agreed to submit the instruction subject to later consideration of the underlying issue. Kladis' speculation as to the effect on the jury of the instruction that he proposed cannot form the basis for a Seventh Amendment claim. Moreover, as an empirical matter, Kladis' assertion is unsupportable. During its deliberations, the jury sent a note to the judge asking specifically about the right of an arrested person to be informed of the charges. The jury ultimately returned a special verdict which carefully distinguished among each claim, finding for Kladis on the failure to inform claim and rejecting the other three.

### C.

▆ Finally, Kladis argues that the district court erred in altering the judgment on the failure to inform claim because the amount of the damages was not excessive. The amount of the damages, however, is entirely irrelevant. The district court altered the judgment because it concluded that Kladis had no Sixth Amendment or Fourth Amendment right to be informed of the reason for his arrest. If no such right exists, then any damage award would have been excessive.

▆ We conclude that neither the Sixth Amendment nor the Fourth Amendment provided Kladis the right to be in-

formed of the reason for his arrest. Although the Sixth Amendment provides an "accused" the right "to be informed of the nature and cause of the accusation," U.S. Const.Amend. VI, we have previously explained that the Sixth Amendment's protection does not come into play until the government has committed itself to prosecution. *See United States ex rel. Hall v. Lane,* 804 F.2d 79, 82 (7th Cir.1986), *cert. denied,* ─ U.S. ─ 107 S.Ct. 1382, 94 L.Ed.2d 696 (1987). Clearly, the state was not committed to prosecuting Kladis during the brief period he remained in custody. He therefore had no Sixth Amendment right to be informed of the reason for his arrest. The Fourth Amendment guarantee against unreasonable seizures might also provide a basis for the right to be informed of the reason for an arrest. However, the Fourth Amendment requires only that the police have probable cause to believe that an individual has broken the law before arresting him or her. *See United States ex rel. LaBelle v. LaVallee,* 517 F.2d 750, 754 (2d Cir.1975), *cert. denied,* 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976); *United States v. Dunavan,* 485 F.2d 201, 205 (6th Cir.1973); *Chaney v. Wainwright,* 460 F.2d 1263, 1264 (5th Cir.1972). In this case, the evidence is sufficient to support the jury's finding that the police had probable cause to believe that Kladis had committed a crime. Although the police would do well to inform arrested persons of the charges against them, the Fourth Amendment does not require the police to do so.

### III.

Kladis next objects to two evidentiary decisions made by the district court. We find no error in either decision.

▆ Kladis argues that the district court erred in allowing the defendants to testify that Kladis appeared intoxicated at the time of his arrest. Kladis argues that this evidence was unduly prejudicial, *see* Fed.R. Evid. 403, and was irrelevant, *see* Fed.R. Evid. 401, because the police neither administered a breathalyzer test nor charged him

with driving while intoxicated. We believe that this evidence was directly relevant to Kladis' claim that the police had used excessive force and his claim that the police lacked probable cause to arrest him. Any prejudice from the testimony that Kladis appeared to be drunk was more than outweighed by its probative value. Therefore, the district court did not err in admitting it.

■■■■■■ Kladis also asserts that the district court erred in allowing a police expert to testify as to the proper level of force to be used by police in various situations. Kladis objects that this evidence was inadmissible because it was not generally accepted by the relevant professional community, see Fed.R.Evid. 703. He also claims that the expert witness' use of a "force chart," which included recommended procedures in cases in which a suspect was armed, was unduly prejudicial because Kladis had not been armed. We conclude that this evidence was admissible.

A district court has "particularly wide discretion" in admitting expert testimony. *United States v. Tranowski*, 659 F.2d 750, 755 (7th Cir.1981). Nonetheless, we have held that expert testimony is inadmissible if it lacks "the necessary indicia of reliability." *Id.* at 756. In addition, expert testimony is subject to Rule 403's general bar on the admission of unduly prejudicial evidence.

In this case, the expert witness testified as to his credentials and informed the court that he frequently instructs police officers in the proper use of force. The district court was well within its discretion in concluding that this testimony provided a reliable basis for the jury to consider whether the defendants had used excessive force against Kladis. The expert witness did discuss procedures in cases in which the police must disarm a suspect. However, the court carefully mitigated any possible prejudice by instructing the jury that this testimony was intended to show the range of possible situations that the police might encounter, and that there was no suggestion that Kladis had used a weapon.

## IV.

Kladis also makes several objections to the district court's jury instructions. However, we find no error.

■■■ Kladis first claims that the court's excessive force instruction was incorrect. The court charged the jury that it was to find for Kladis if it found that the defendants' use of force had been unreasonable. The court then defined the term "unreasonable" using the standard set forth in *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). Kladis claims that the instruction was fatally defective because the district court used the word "unreasonable" rather than "unconstitutional" or "excessive." However, the relevant fact is that the court set out the specific elements of the *Gumz* test. Whether the court labeled a violation of these standards unreasonable rather than unconstitutional is of no consequence.

■■■ Kladis also asserts that the district court erred by giving a qualified immunity instruction concerning his excessive force claim. However, we need not consider this contention. The jury returned a special verdict finding that the police had not used excessive force. Therefore, the jury had no opportunity to consider the issue of qualified immunity.

■■■ Kladis also challenges the district court's instruction regarding his probable cause claim. In its charge, the court reminded the jury that the defendants had testified that at the time they arrested Kladis they believed that he had committed two offenses: parking on a roadway and aggravated battery. The court then defined these offenses. Kladis objects to this instruction, arguing that the court was barred from discussing these offenses because the police never charged him with them. We disagree. By defining the elements of the offenses, the court enabled the jury to evaluate Kladis' claim that the police lacked probable cause to believe that he had committed an offense.

V.

We find no merit in any of Kladis' claims. The judgment of the district court is AFFIRMED.