Nicholas STACHNIAK,
Plaintiff–Appellee,

v.

Louis P. HAYES and Susan Srch,
Defendants–Appellants.

Nicholas STACHNIAK, Plaintiff–
Appellant,

v.

VILLAGE OF OAK BROOK, POLICE DEPARTMENT, Louis P. Hayes, Susan Srch, et al., Defendants–Appellees.

Nos. 91–2960, 91–3053.

United States Court of Appeals,
Seventh Circuit.

Argued April 28, 1992.

Decided March 19, 1993.

Stephen J. Connolly, Michael S. Cetina (argued), Connolly, Ekl & Williams, Clarendon Hills, IL, for plaintiff-appellee.

Richard T. Ryan, Mark F. Smolens (argued), Flynn, Murphy & Ryan, Chicago, IL, for defendants-appellants.

Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Nicholas Stachniak made four claims in his 42 U.S.C. § 1983 action arising from his arrest in the Village of Oak Brook, Illinois, on charges of aggravated battery and resisting arrest, and his conviction on the resisting arrest charge. He sued Oak Brook Police Officers Louis P. Hayes, Susan Srch, Steven Larson, and William Haas in their official capacities alleging that the officers used excessive force in effecting his arrest in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. Stachniak also alleged that the Oak Brook Police Department maintained a policy of non-disclosure of internal affairs statements that deprived him of his due process rights under the Fourteenth Amendment, and his right to effective assistance of counsel, his right to confront witnesses, and his right to a fair trial under the Sixth Amendment. In addition, Stachniak claimed that Officer Hayes arrested him on false and "exaggerated charges" of aggravated battery and resisting arrest in violation of his due process rights under the Fourteenth Amendment, his right to effective assistance of counsel and right to confront witnesses under the Sixth Amendment, and his right to be free from unreasonable searches and seizures under the Fourth Amendment. Finally, Stachniak claimed that Officers Hayes and Srch precipitated a malicious prosecution of him by falsely swearing out complaints against him, on behalf of the state of Illinois, for two felony counts of aggravated battery. The defendants Hayes and Srch counterclaimed against Stachniak, alleging that during his arrest he committed battery against them when he shoved Hayes in the chest, punched him in the shoulder, and head-butted him; and when he choked Officer Srch.

At trial, the district judge directed a verdict on the municipal liability claim in favor of the Oak Brook Police Department, finding that the Department's policy of nondisclosure of internal affairs statements did not violate Stachniak's constitutional rights under the Sixth and Fourteenth Amendments.

The jury returned verdicts in favor of defendant Officer Hayes on the false arrest claim, and in favor of defendant Officers Larson and Haas on the excessive force claim. The jury awarded Stachniak compensatory damages in the amount of $25,000 against Officers Hayes and Srch on his excessive force claim, but declined to award Stachniak punitive damages. In addition, the jury found in favor of the defendants Hayes and Srch on their battery claim, awarding compensatory damages of $2,500 and $7,500 to the respective officers. The jury also found in favor of Hayes and Srch on the malicious prosecution claim. The district court entered judgment on the jury's verdicts and on July 17, 1991 denied Stachniak's and the defendant officers' motions for a new trial. Hayes and Srch appeal the trial court's denial of their motion for a new trial and the entry of the jury's verdicts finding they used excessive force in arresting Stachniak; Stachniak cross appeals (1) the jury's finding in favor of Hayes and Srch on their battery claim; (2) the district court's directed verdict in favor of the Oak Brook Police Department on the municipal liability claim; and (3) the jury's failure to award punitive damages on his excessive force claim. We affirm.

## I. FACTS

On the evening of December 26, 1988, Stachniak and his friends Don Hanke, Karin Leavitt, and Kurt Birkahn, along with several other acquaintances, were drinking alcoholic beverages at an Oak Brook, Illinois tavern. Stachniak testified that he consumed six or seven beers in the tavern and "definitely was feeling the alcohol", but did not "think" he "was intoxicated." Later that evening Stachniak, Hanke, and Leavitt were passengers in Birkahn's pickup truck when Birkahn was pulled over by Officer Srch for driving without headlights. Officer Srch detected an odor of alcohol on Birkahn's breath, conducted a field sobriety test, determined that he was unfit to operate a motor vehicle, and placed him under

arrest for driving under the influence of alcohol. As Officer Srch was arresting Birkahn, Officer Larson and Officer (probationary) Tammy Shuey arrived as backups. After Birkahn was conveyed to the police station, Srch took Shuey (who was learning how to process a DUI arrest) through the necessary paperwork while Birkahn was offered a twenty-minute period to decide whether to submit to a breathalyzer test, which he subsequently refused. As part of the processing of Birkahn's DUI arrest, Officers Srch and Shuey interviewed and observed him for about 15 minutes and completed an alcohol influence report form. (An alcohol influence form contains a variety of questions, which police are required to ask persons arrested for DUI, to determine what the person had been doing immediately prior to his arrest, and also whether his speech was slurred and his memory was normal.) Meanwhile, Stachniak and his friends Hanke and Leavitt drove to the home of Stachniak's friend Dino Bartolomei to obtain bond money for Birkahn's release and proceeded to the Oak Brook police station to post a bond for Birkahn.

Shortly thereafter, Stachniak inquired of Margaret Garay, the police department's communications operator, who was located behind a glass window, as to the length of the DUI processing procedure. Garay testified that she suggested to Stachniak that he take a seat on the bench and wait to ask the arresting officers his questions. Not satisfied with the operator's response, Stachniak began pacing back and forth in front of the windows, tapping on the glass, and speaking loudly through the window grates. Garay testified that Stachniak was very agitated and "he wanted to know what was taking so long and what they were doing." When Officers Srch and Shuey returned to the reception area with Birkahn, they permitted Birkahn to wait with his friends while the officers completed the bond form. Again, Stachniak returned to the window and badgered the officers with questions about the length of the booking procedure. As Stachniak persisted in challenging Officers Srch and Shuey as to why it was taking so long to

release Birkahn, Officer Hayes arrived in the area. Garay advised Hayes that Stachniak was "being real loud and he's tormenting Sue [Srch] and stuff." Officer Hayes then took up a position behind the window in hopes that his six foot, three inches and 290 pound presence might dissuade Stachniak from further disruptive conduct. Stachniak again walked over to the window and this time made facial gestures in the direction of Officers Srch and Shuey and began staring at Officer Hayes. At that point Hayes asked Stachniak, "Is there a problem?" After a short conversation, Hayes exited the police area behind the window and asked Stachniak, "[w]hy don't you just sit down?"

At this point, the parties' versions of the incident conflict. We begin with the officers' version. According to Hayes, Stachniak refused to sit down and instead "stepped forward toward me and he was standing within about five inches from my face. I detected a strong odor of alcoholic liquor about his breath. I noticed that his eyes were a little bloodshot or glassy and just the way he stepped up to me I felt it was in a combative type stance to come into my area...." Hayes testified that he then "put up [his] hands" and placed his fingertips on Stachniak's chest, applying fingertip pressure to Stachniak's chest to push him toward the door, while directing him to leave the police station. Hayes explained at trial that it was police department practice not to permit people who are drunk or disorderly to remain in the station's lobby because they interfere with police operations. Hayes claims that he directed Stachniak to leave the station and Stachniak refused, asserting "I know my constitutional rights. I don't have to leave the station." (Stachniak was a first-year law student.) Officer Hayes then told him "[y]ou are not welcome here anymore. You have been disruptive to the girls and I want you to leave ... Why don't you go out and wait in the car for your friend. He will be bonded out shortly." Stachniak responded by pushing Hayes in the chest. Hayes continued hurrying him to the door; Stachniak pushed him again, and Hayes

repeated, "[g]o outside and wait for your friends." As they reached the exit doors, Stachniak punched him in the shoulder. Hayes then said, "[n]ow you are under arrest. You are under arrest for battery to a police officer, and I am going to take you downstairs and I am going to book you and process you. Don't resist arrest and don't make it any worse than it is." Stachniak replied "I am not going to be under arrest" and crouched into a defensive position, placing his hands between his legs, thus thwarting Hayes' attempt to handcuff him. According to Hayes and Srch, Stachniak violently resisted their attempts to arrest him. During the struggle, Hayes said that Stachniak sent him reeling with a head-butt that opened up a gash over his eye and filled his eye with blood. After Hayes regained his composure, he observed Srch, who had managed to attach a handcuff to Stachniak's left wrist, struggling to gain control of the loose handcuff that was swinging near Srch's head. Hayes testified that he gave Stachniak a "fast punch to the face" in an effort to get him to bring his hands up toward his head so that they could cuff his other hand. Stachniak responded by choking Srch, who called out to Hayes, "I can't breathe; I can't breathe." Hayes then attempted to "break [Stachniak's] hold" on Srch by pushing Stachniak's chin. At this time, Stachniak attempted to bite Hayes' hand. Hayes pulled his hand back and "hit him again in the face." Stachniak retained his hold on Srch and she was still "gasping for air." Hayes then put his hand under Stachniak's "chin or jawbone" and pulled him to the ground. Hayes stated that he was "physically exhausted" and "just laid on top of Mr. Stachniak the best I could" in order to restrain him. The officers then managed to hand and anklecuff Stachniak, who was still "kicking like a mule."

Stachniak denies almost every element of the officers' story, and claims that the altercation began when Hayes, pushing him toward the exit door, responded to his question "what have I done wrong," by stating "you're under arrest" and then jumping him. Stachniak claims that he only took defensive actions to fend off the attack from Hayes and Srch. He claims that the gash on Hayes' forehead resulted from the loose handcuff that Srch had placed on his wrist. Stachniak denies punching Hayes or choking Srch, and insists Hayes punched and choked him. Stachniak claims that after he was cuffed, Officer Hayes picked him up and threw him against a wall. (Hayes explains that he pushed Stachniak against a wall because he continued to resist arrest by kicking at the officers.)

After Hayes, Shuey, and Srch succeeded in cuffing his ankles and wrists, Hayes and Larson moved him from the lobby into the secured area of the police station and placed him in the stairwell. The officers did not take him down the stairs where they would normally take an arrestee for processing because they considered Stachniak too violent and the risk of injury to all concerned too great to convey him down a flight of stairs. After the two officers laid Stachniak on the stairwell landing, he continued to thrash his arms and legs and kick in spite of the cuffs on his hands and ankles. In addition, one loose handcuff was still dangling from Stachniak's left wrist.

While in the stairwell, Stachniak alleges that Officer Srch "kicked" him in the ribs and in the buttocks, and that Officer Hayes "kicked" him behind his right ear. Srch explains that while lying in the stairwell Stachniak was moving his arms (he was handcuffed with his arms in front) to swing the loose handcuff on his left wrist and that when she approached Stachniak swung the handcuff at her. She told him to stop, he tried to swing it at her again, and then she "kicked him in the buttocks." Officer Srch described her kick of Stachniak's buttocks as being very light and done without "any force at all." Officer Hayes admits walking past Stachniak on his way to the booking department with a compress on his eye, but denies kicking Stachniak in the ear. Officer Shuey testified that "the outer portion of [Hayes'] right foot" came into contact with Stachniak's head, but she described it as more like a "side swipe" than a kick.

We note that, according to his own testimony, Stachniak was a member of the University of California at Berkeley gymnastics team during a four-year period when Berkeley had one of the nation's outstanding collegiate gymnastics programs. The officers' attorney elicited this information as evidence that Stachniak was a man of extraordinary physical strength. Stachniak testified that he had stopped gymnastics training when he graduated from college in 1985 and that by the time of this incident over three years later, he was in "terrible physical shape." However Stachniak measures his true physical condition on the night of his arrest, it is undisputed that several officers had great difficulty in subduing him.

Stachniak and Hayes were taken by ambulance to Hinsdale Hospital for examination and treatment of their injuries. Dr. Mark A. Shaffer, who treated Stachniak, stated in his deposition testimony that there were bruises on Stachniak's forehead, a controlled nose bleed in both nostrils, abrasions and a one-inch laceration behind the right ear, a non-displaced nasal bone fracture, and a non-displaced tenth rib fracture on Stachniak's right side.

After Stachniak's return from the hospital, he was booked on two counts of aggravated battery, one for each of his alleged assaults against Officers Hayes and Srch, and one count of resisting arrest.

In January 1989, Stachniak's father filed a complaint with the Oak Brook Police Department asserting that the arresting officers used excessive force against his son. In response, in mid-January 1989, James R. Fleming, the Chief of the Oak Brook Police Department, initiated an internal investigation of Stachniak's arrest and assigned Lieutenant Pisarek to conduct the inquiry. Lieutenant Pisarek, in the course of the internal investigation, took statements from Officers Shuey, Larson, and Haas in mid-February 1989, which were later transcribed. Shuey reported in her statement that Hayes kicked Stachniak in the ear and that Srch kicked Stachniak in the buttocks while he was in the stairwell. Officer Larson's statement also set forth that Officer Srch kicked Stachniak in the buttocks and the upper thigh while he was lying in the stairwell.[1]

In conducting discovery in preparation for Stachniak's criminal trial, Stachniak's attorney, Ernest DiBenedetto, served a subpoena on February 6, 1989, seeking "any and all personnel records and/or disciplinary reports of the Village of Oak Brook, Board of Fire and Police Commissioners pertaining to Sgt. Louis P. Hayes and Susan Srch." Attorney DiBenedetto conceded at trial that the Oak Brook Police Department had complied with this subpoena. Although the Oak Brook Police Department upon request released the personnel records and files of Hayes and Srch, it retained the internal investigation statements of Officers Shuey, Larson and Haas in a segregated, confidential file pursuant to the Oak Brook Police Department's General Order 82–6 and Rule 6.6 of the Police Department's Rules and Regulations.[2] The criminal trial against Stachniak on the aggravated battery and resisting arrest charges commenced in May, 1989, but neither the prosecution nor the defense counsel were aware at that time that an internal investigation had been conducted which included statements of Officers Shuey, Larson and Haas. Stachniak went to trial in the Circuit Court of Du Page County, Illinois, and a jury found him guilty of resisting arrest, but acquitted him on the aggravated battery charge. Thereafter, Stachniak initiated this § 1983 action. Hayes and Srch counterclaimed against Stachniak, and the cases were consolidated.

## II. DEFENDANT OFFICERS HAYES' AND SRCH'S APPEAL

The test to be applied in determining whether a motion for a new trial should be

---

1. Officers Hayes and Srch gave their statements in the internal affairs investigation after Stachniak's criminal trial.

2. On appeal, the cross-appellant Stachniak has failed to make the text of General Order 82–6 and Rule 6.6 of the Oak Brook Police Department's Rules and Regulations part of the record. Chief Fleming stated that it was the practice of the Oak Brook Police Department to keep the internal investigation files completely separate from the personnel files and records of the Police Department.

granted is whether "the verdict is against the weight of the evidence, ... or ... the trial was not fair to the party moving." *Fleming v. County of Kane,* 898 F.2d 553, 559 (7th Cir.1990) (citation omitted). As we stated in *Superbird Farms, Inc. v. Perdue Farms, Inc.,* "the grant or denial of a motion for a new trial is not subject to review by this court, except upon exceptional circumstances showing a clear abuse of discretion." 970 F.2d 238, 249 (7th Cir. 1992) (citation omitted). In appealing the district court's denial of their motion for a new trial, Officers Hayes and Srch ask this court to consider (1)· whether the district court committed error in its jury instructions; (2) whether the district court erred in providing a supplemental oral instruction concerning the battery jury instruction in its answer to· a jury question during deliberations; and (3) whether·the district court abused its discretion in refusing to allow the defendants' proffered expert witness, John Bowman, to testify concerning the use of force.

### Disputed Jury Instructions

The defendants argue that each of the disputed jury instructions constitutes reversible error, mandating a new trial. We look at jury instructions in the broad context of the entire trial including the court record, the court's rulings, the allegations set forth in the pleadings, the evidence presented at trial, as well as opening statements and closing arguments of counsel. *Sims v. Mulcahy,* 902 F.2d 524, 533 (7th Cir.), *cert. denied,* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). We have stated:

> "In general, appellate review of jury instructions is limited. *See Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1117 (7th Cir.1983). *When reviewing the adequacy of jury instructions, the court should 'construe them in their entirety and not in artificial isolation.' Id.* at 1117. *Reversal is only mandated if the jury's comprehension of the issues is so misguided that a litigant is prejudiced."*

*New Burnham Prairie Homes v. Burnham,* 910 F.2d 1474, 1483 (7th Cir.1990) (emphasis added). *"[W]e must look to the instructions as a whole,* in a common sense manner, avoiding fastidiousness, inquiring whether the correct message was conveyed to the jury reasonably well." *Wilk v. American Medical Ass'n,* 719 F.2d 207, 218 (7th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984) (emphasis added). We will not reverse the trial court's decision to give a particular jury instruction unless it appears that "the jury was misled ... [and its] understanding of the issue was seriously affected to the prejudice of the complaining party." *Northbrook Excess & Surplus v. Procter & Gamble,* 924 F.2d 633, 638 (7th Cir.1991) (citations omitted).

Moreover, if a party fails to make a specific, timely jury instruction objection during trial, an argument regarding that jury instruction is deemed to be waived for purposes of appeal. As we stated in *Bogan v. Stroud,* 958 F.2d 180, 183 (7th Cir. 1992) (emphasis added):

> "Rule 51 of the Federal Rules of Civil Procedure provides that '[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.' Fed.R.Civ.P. 51. *'Not only must the party object to the jury instruction, its "objection must be sufficiently detailed to draw the court's attention to the defect [in the jury instruction]."' Sims v. Mulcahy,* 902 F.2d 524, 535 (7th Cir.), *cert. denied,* [498] U.S. [897], 111 S.Ct. 249 [112 L.Ed.2d 207] (1990) (quoting *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1295 (7th Cir.1987))."

When objecting to a jury instruction, the party's objection must be specific and contemporaneous with the alleged error to give the court an opportunity to correct the error before jury deliberation, if in fact there is error. *Id.; Sims,* 902 F.2d at 535.

### A. JURY INSTRUCTION: EXCESSIVE FORCE

The defendants Hayes and Srch challenge two of the excessive force jury instructions given during trial.

### 1. First Excessive Force Instruction

The defense counsel argued in the jury instructions conference that Officer Hayes should not be singled out from the other three officers in the first excessive force instruction as the particular and/or only officer using force in the arrest of Stachniak. Specifically, the defense counsel stated that the instruction should read: "the defendants allege that the plaintiff's unlawful resistance to his arrest and voluntary intoxication were the sole proximate causes of any injury allegedly sustained by the plaintiff on December 27th, 1988." Thereafter, the court revised a portion of the first excessive force instruction to include both the plaintiff's and the defendants' claims and to refer to the arresting officers as "the defendants" so that Officer Hayes would not be singled out. After revision, the first excessive force instruction stated:

"I will now discuss plaintiff's claim that each of the defendants used excessive force against him.

"The Fourth Amendment to the United States Constitution protects a person from the use of unreasonable force while being arrested by a law enforcement officer, even if the arrest is based upon probable cause. A police officer is never entitled to use more physical force than is reasonably necessary to effect an arrest or to defend himself or another.

"Plaintiff claims that defendant Hayes began beating him without provocation and continued to beat and physically assault him when plaintiff was doing nothing but attempting to defend himself. *Plaintiff claims that the other defendants then joined in the assault upon him. Defendants, on the other hand, claim that the plaintiff resisted their attempts to place him under arrest and that they used no more force than was reasonably necessary to effect the arrest and to defend themselves from use of physical force by the plaintiff.*"

(emphasis added).

During trial both Hayes and Srch failed to object to the revised instruction which included the plaintiff's and Hayes' and Srch's claims concerning the type of force applied when attempting to subdue and take Stachniak into custody. As we observed earlier, Fed.R.Civ.P. 51 states that the failure to object to a jury instruction in a specific and timely manner amounts to waiver of that issue on appeal. *Bogan,* 958 F.2d at 183. Since the defense attorney failed to object to the trial court's revisions to the first excessive force jury instruction, Hayes' and Srch's argument is deemed waived.

### 2. Second Excessive Force Instruction

■ Hayes and Srch claim the second excessive force instruction was erroneous. The second excessive force instruction stated:

"A police officer is prohibited, however, from using more force than is reasonably necessary to effect the arrest or to protect the officer or another from bodily harm. Whether the degree of force used in this case was excessive or 'unreasonable' in the constitutional sense is to be determined by you in the light of all the facts and circumstances in the case."

The defendants argue that the instruction is unfairly repetitive of the first excessive force instruction, which stated that the Fourth Amendment protects "a person from the use of unreasonable force while being arrested by a law enforcement officer." We disagree. The district court gave the second excessive force instruction in hopes of clarifying the amount of force necessary and reasonable in effecting an arrest. Because our review of the record reveals that the second excessive force instruction did not restate the plaintiff's and the defendants' claims concerning the force used to arrest Stachniak and merely instructed the jury to determine whether the force used to arrest Stachniak was necessary and reasonable "in light of all the facts and circumstances in the case," we refuse to hold the instruction was unfairly repetitive.

The defendant officers also claim that the second excessive force instruction was erroneous because it conflicted with the "objectively reasonableness" standard set

forth in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham,* the Supreme Court stated:

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a *careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'* against the countervailing governmental interests at stake. . . .

"The calculus of reasonableness must embody allowance for the fact that *police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving*—about the amount of force that is necessary in a *particular situation.*

"As in other Fourth Amendment contexts . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is *whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them,* without regard to their underlying intent or motivation."

*Id.* at 396–97, 109 S.Ct. at 1871–72 (emphasis added). The defendants argue that *Graham* mandates that the jury be instructed on Stachniak's claim of excessive use of force under an objectively reasonableness standard, and that the second excessive force instruction should· have stated: "Whether or not the force used in making an arrest was 'unreasonable', in the constitutional sense, is to be determined in the light of the surrounding circumstances, on the basis of *that degree of force reasonable and prudent officers would have applied under the circumstances disclosed in this case.*" (Defendants' Instruction No. 10).

■ The defendants' proposed language for the second excessive force instruction was adequately communicated to the jury in the proffered instruction. The jury was informed that a police officer cannot use force to effect an arrest unless it is necessary and reasonable, and the jury was asked to determine whether the defendant officers' actions were "objectively reason-

able" in arresting Stachniak "in light of all the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. Moreover, the second excessive force instruction's "facts and circumstances" language met the standard articulated in *Graham* for determining a police officer's reasonableness in using force to make an arrest because it recognized that police officers are "forced to make split-second judgments—in *circumstances* that are tense, uncertain, and rapidly evolving." *Id.* (emphasis added). We are convinced that the instruction properly advised the jury of the relevant issues concerning Stachniak's excessive force claim in that it directed the jury to consider whether the force exerted was necessary and reasonable *in light of all of the surrounding facts and circumstances.* After reviewing the record, including the pleadings, the instructions, the evidence, and the opening statements and closing arguments, we refuse to conclude that the second excessive force instruction misled the "jury's comprehension of the issues" to the extent that the defendants Hayes and Srch were prejudiced. *New Burnham,* 910 F.2d at 1483 (citation omitted).

## B. BATTERY INSTRUCTION ON HAYES' AND SRCH'S COUNTER-CLAIM

■ The defendants Hayes and Srch claim that the district court's answer.to the jury's question during the jury deliberations was improper. The jury asked: "We would like further clarification on the counter-defendant [Stachniak] acted without lawful justification [sic]. How much resistance could Nick [Stachniak] put up." In response, the district court stated:

"That phrase, 'the counterdefendant acted without lawful justification,' is, of course, from the instruction on the counterplaintiffs' burden of proof on their battery claims. I would like to refer you to another of the instructions I gave, and they are not numbered, but this is the twentieth one from the beginning, if you will go 20 pages in. . . .

"It is the instruction that starts, 'A person is not authorized to use force to resist an arrest which he knows is being made by a police officer even if the person believes the arrest is unlawful. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary in the circumstances.'

"*So, in short, Mr. Stachniak was not authorized to use any force in resisting arrest. In the event he reasonably perceived that it was necessary to defend himself, he was entitled to use that degree of force but only that degree of force which he reasonably believed was necessary to defend himself. In using that degree of force and no more, he would have been acting with lawful justification. If he exceeded that degree of force, he would have been acting without lawful justification to that extent. Does that answer your question?*"

(emphasis added).

Hayes and Srch argue that the trial court's response to the jury's question during deliberations was a supplemental instruction because the trial judge's oral comment concerning how much force Stachniak was authorized to use in resisting arrest amounted to a departure from the jury instructions agreed upon in the instructions conference. In *Bachman v. St. Monica's Congregation,* 902 F.2d 1259, 1262 (7th Cir.1990), we stated that when a judge ad libs and departs from the instructions that the court had previously agreed to give during the instructions conference, he must give the parties an opportunity to object. Further, a judge is permitted to orally paraphrase written instructions "to lend spontaneity and enhance understanding" of the agreed upon instructions. *Joseph v. Brierton,* 739 F.2d 1244, 1249 (7th Cir.1984). The trial judge's reading of the resisting arrest instruction and summary of its meaning in response to the jury's question did not rise to the level of a "departure" because the oral summary neither improperly added nor omitted any portion

of the jury instruction agreed upon at the conference.

## C. JURY INSTRUCTION: NOMINAL DAMAGES

■ Hayes and Srch contend that the trial judge should have given a nominal damages instruction to the jury. An instruction on nominal damages is only appropriate to "vindicat[e constitutional] rights whose deprivation has not caused actual, provable injury." *Sahagian v. Dickey,* 827 F.2d 90, 100 (7th Cir.1987) (citation omitted). In their reply brief, the defendant officers state there is "[n]ot a scintilla of evidence in the record before this Court [to] support[] the conclusion that, as a matter of law, 'at least some *actual* injury was suffered' by the plaintiff." Reply br. at 5. The record before us fails to support this contention. Stachniak testified that Officer Srch kneed him in the groin, and kicked him when he was lying in the stairwell; that Officer Hayes punched him in the nose, choked him, threw him into a brick wall, and also kicked him when he was down. Dr. Shaffer, who treated Stachniak for his injuries inflicted during the melee at the police station, stated in his deposition (1) that Stachniak had a non-displaced nasal bone fracture and a controlled nosebleed in both nostrils; (2) that Stachniak had a one-inch laceration behind his right ear and multiple other minor abrasions in various parts of his body; and (3) that Stachniak suffered a non-displaced tenth rib fracture. The police officers contend that Stachniak was injured when they were forced to respond to his violent efforts to resist arrest. Nevertheless, there is no denying that Stachniak suffered physical injuries during the incident. The district court ruled that "there is no possibility that the jury could award nominal damages in this case based on the evidence...." From our review of the record, we have been unable to discover any evidence presented at trial in support of the defendants' argument that Stachniak suffered no provable injury during the struggle with the officers. Accordingly, the

court correctly refused to give a nominal damages jury instruction.

## D. JURY INSTRUCTION: MERE INADVERTENCE

██ Hayes claims that the trial court erred in failing to give the defendants' "mere inadvertence" instruction. The proffered mere inadvertence instruction stated:

"[N]ot every injury inflicted by an individual acting 'under color of law' is a deprivation of a person's constitutional rights. If an injury results because of an accident or because the officer was negligent, no constitutional deprivation has occurred."

The defendant officers' argue the district court should have given a mere inadvertence instruction focusing on Hayes' alleged kicking of Stachniak while he was laying in the stairwell. As we noted above, Hayes denies that he kicked Stachniak behind the ear as he walked past him in the stairwell. Stachniak contends that Hayes deliberately kicked him. Officer Shuey testified that Hayes "side swipe[d]" Stachniak as he walked by him.

Hayes argues that the district court's refusal to give the mere inadvertence instruction prejudiced his defense because it represented a ruling "that the defendants were not entitled to pursue more than one theory of defense." The trial court did not rule that Hayes could not pursue "more than one theory of defense." The trial court found the giving of an "inadvertence instruction" inappropriate in light of the definition of the word, "kick." The word "kick" is defined in the American Heritage Dictionary as "to propel by striking with the foot; to strike out with the foot or feet." American Heritage Dictionary (2d ed. 1982). It is impossible for a "kick" to be inadvertent because a "kick" involves a mental process requiring a calculated judgment to engage the force of the foot in a striking movement while propelling the foot forward toward an object. *See id.* The district judge refused the inadvertence

instruction in reference to Officer Hayes' kick of Stachniak's ear because "[t]he evidence is it didn't occur on the one hand, and, on the other hand that it was done deliberately. There isn't any evidence in this case that it was done [inadvertently]." The record is barren of any testimony supporting Hayes' assertion that he lost his balance and his foot accidentally came in contact with Stachniak's ear. We agree with the district court's reasoning that there was an inherent conflict in giving an inadvertence instruction when the evidence in the record establishes that either Hayes kicked Stachniak intentionally or he did not kick him. Thus, the trial court properly refused to give the inadvertence instruction.

## E. EXCLUSION OF DEFENDANTS' EXPERT WITNESS

██ Hayes and Srch contend that the district court abused its discretion when it excluded the deposition testimony of the defendants' proffered expert, John Bowman, an Associate Professor at the University of Illinois' Police Training Institute. The defendant officers assert that because of this error a new trial is warranted. Bowman's testimony was offered to establish that Officer Hayes was acting "reasonabl[y] under the circumstances" in striking Stachniak in the nose in an effort to subdue and handcuff him. Generally, we will reverse a district judge's decision to exclude an expert witness' testimony only if the judge has abused his discretion in doing so. *United States v. Tipton,* 964 F.2d 650, 653 (7th Cir.1992). The district court gave two reasons for barring Bowman's testimony. First, the district court found that Bowman would not offer the jury any expert advice on the question whether Hayes acted reasonably in subduing Stachniak. At his deposition,[3] Bowman stated: "So the subject as far as fighting resistance, the officer is pretty much on his own to do whatever he learned to do some-

---

**3.** The defendants Hayes and Srch failed to include the full text of Bowman's deposition in the record on appeal. The district court read into the record the statements from Bowman's

deposition testimony that described his knowledge of Stachniak's arrest and his opinion on the force that Hayes and Srch used to arrest Stachniak.

where else. We can't teach people to fight in the Police Academy." Federal Rule of Evidence 702 states:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Since Bowman admitted that he was unable to give expert advice regarding the proper use of force to employ against persons resisting arrest, the trial judge properly excluded Bowman's testimony. The defendant officers' reliance on *Kladis v. Brezek,* 823 F.2d 1014 (7th Cir.1987), for the admission of Bowman's testimony as an expert witness is misplaced. The expert witness in *Kladis* testified he frequently instructs police officers concerning the proper use of force they may apply in resisting arrest cases. *Id.* at 1019. Unlike the expert in *Kladis,* Bowman was unable to testify regarding the proper use of force the defendant officers should have used against Stachniak. *See id.*

■ Furthermore, the district court excluded Bowman's expert testimony in reliance upon Bowman's stated bias. At his deposition, Bowman stated that he "would probably weigh [his] opinion in favor of the police as opposed to that of persons who were arrested or were involved in the arrest itself...." We have stated that "[c]redibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury." *United States v. Benson,* 941 F.2d 598, 604 (7th Cir.1991). The district

court correctly concluded that Bowman's obvious bias disqualified him as a witness.

## F. SUMMARY

In sum, the defendant officers failed to present a convincing argument to establish that the trial court erred (1) in giving the excessive force instructions and in answering the jury's question concerning the battery instruction; (2) in failing to give the nominal damages and mere inadvertence instructions; and (3) in excluding the defendants' expert witness. Therefore, no basis exists for the reversal of the jury's verdicts and the granting of a new trial on these grounds. Accordingly, we hold that the district court properly denied the defendant officers' motion for a new trial.

## III. STACHNIAK'S CROSS APPEAL

■ Stachniak cross appeals arguing (1) that the district court erred in granting a directed verdict for the Village of Oak Brook Police Department on his § 1983 claim; and (2) that the jury erred in failing to award him punitive damages on his excessive force claim.[4]

## A. DIRECTED VERDICT FOR THE VILLAGE OF OAK BROOK POLICE DEPARTMENT

In his § 1983 action, Stachniak sued the Village of Oak Brook Police Department in its official capacity for allegedly violating his due process rights under the Sixth and Fourteenth Amendments. The granting of a directed verdict is proper only where reasonable people, viewing the facts in the light most favorable to the plaintiff, could not conclude that the plaintiff has made out a *prima facie* case. *Rakovich v. Wade,* 850 F.2d 1180, 1188 (7th Cir.), *cert.*

---

4. On cross appeal Stachniak also claims that the battery verdict in favor of Officers Hayes and Srch is against the "manifest weight of the evidence" and should be reversed. "The test in this circuit for reviewing a jury verdict on appeal is not whether it was against the weight of the evidence, but whether there is a reasonable basis in the record for the verdict." *Carmel v. Clapp & Eisenberg, P.C.,* 960 F.2d 698, 703 (7th Cir.1992). Hayes and Srch both testified that Stachniak, in resisting Officer Hayes' attempt to

place handcuffs on him, head-butted Hayes. The two officers also described how Stachniak choked Srch until she began to "black out", and how Srch called out to Hayes, "I can't breathe, I can't breathe". Since there is more than sufficient evidence in the record establishing a reasonable basis to support the jury's verdict that Stachniak committed battery against both Officers Hayes and Srch, the jury's verdict on the battery claim was proper.

*denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Stachniak argues that the district court committed error in granting a directed verdict for the Oak Brook Police Department. Specifically, Stachniak claims that his due process rights were violated because the State failed to disclose the statements of Officers Shuey, Larson and Haas, contained in internal affairs investigation files, prior to his criminal trial as required under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). *Brady* provides that the suppression of evidence violates a criminal defendant's due process rights if that evidence is material either to the guilt or the resulting punishment of the accused. *Id.* at 87, 83 S.Ct. at 1196. In this case, the "evidence" allegedly suppressed were the written statements of Shuey, Larson and Haas taken during the Police Department's internal affairs investigation of Stachniak's arrest. "[E]vidence is material [under *Brady* ] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *United States v. Phillips,* 854 F.2d 273, 276 (7th Cir.1988) (citation omitted). The making of a *Brady* request does not grant criminal defendants "unfettered access to government files." *Phillips,* 854 F.2d at 277. There is a public interest in maintaining the confidentiality of governmental information, such as Shuey's, Larson's and Haas' statements contained in the Oak Brook Police Department's internal investigation files. *Phillips,* 854 F.2d at 277. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 110–111, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). Moreover, the Supreme Court has recognized that:

> *"[i]n the typical case where a defendant makes only a general request for exculpatory material* under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194[, 1196], 10 L.Ed.2d 215 (1963), *it is the State that decided which information must be disclosed.* Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files...."

*Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987) (footnote omitted) (emphasis added).

In order for Stachniak to establish municipal liability on the part of the Oak Brook Police Department he must initially identify some policy or custom of the Police Department which resulted in a deprivation of his constitutional rights. *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Secondly, he must demonstrate how the application of that policy caused his injury. *Id.* Applying the first criteria, the district judge found that the non-disclosure of internal affairs statements pursuant to General Order 82–6 and Rule 6.6 of the Department's Rules and Regulations failed to constitute a "policy of confidentiality concerning the internal affairs investigation." The district court stated that there is a vast difference between a request for a personnel file and a request for a departmental internal investigation file, and concluded that Stachniak's subpoena[5] failed to properly request the production of the internal investigation file or any statements taken in that internal investigation. In fact, DiBenedetto, Stachniak's attorney in his criminal trial, testified that the prosecution tendered to him the documents he requested in the subpoena. We agree that Stachniak's sub-

---

**5.** The Oak Brook Police Department sent the personnel files of Officers Hayes and Srch pursuant to Stachniak's subpoena demanding the production of:

> "1. Any and all personnel records and/or disciplinary reports of the Village of Oak Brook, Board of Fire and Police Commission-

ers pertaining to Sgt. Louis P. Hayes and Susan Srch;

> 2. A listing of the names, rank and identification number of all employees of the Village of Oak Brook Police Department who were employed and on duty on December 27, 1988 at/or about 12:48 A.M."

poena, which merely requested "any or all personnel records and/or disciplinary reports ... pertaining to Sgt. Louis P. Hayes and Susan Srch," failed to set forth with the necessary detail or specificity a request for the officers' internal affairs statements as those statements could not be considered to be either personnel or disciplinary records. The internal affairs statements were part of the investigation of the defendant officers' conduct and actions in subduing and taking Stachniak into custody after his arrest and, as we noted in footnote 2, the statements were kept in a separate police department file from the personnel files and records of the department. Although Stachniak and DiBenedetto were aware that Stachniak's father had submitted a complaint to the Oak Brook Police Department, Stachniak failed to request with any specificity the records he was interested in pertaining to the Department's investigation. The district court reasoned that the Department's policy of segregating the personnel files from the internal investigation files would not have prevented their disclosure had Stachniak specifically requested those documents. The trial court stated: "[i]t was simply a policy that the pendency of a complaint against an officer will not be made a matter of public knowledge." The trial judge went on to note that "Chief Fleming testified without contradiction" that the Police Department would have tendered the internal affairs files to Stachniak if he had properly requested the production of those files either through a proper subpoena, a proper written or oral request from the State's Attorney, or a request that met the standards of the Freedom of Information Act. Because Stachniak failed to specifically request any internal investigation files and/or reports, we agree with the district court that Stachniak failed to establish that the Oak Brook Police Department maintained a policy or custom of not disclosing internal investigation files.

█ Even had Stachniak been able to demonstrate that the Oak Brook Police Department had a policy of refusing to disclose internal investigation files, his *Monell* claim would still fail because he has not shown how non-disclosure of the internal investigation statements harmed him. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2035-36. Stachniak argues that the Department's non-disclosure of internal investigation statements harmed his cause because he was unable to use Shuey's [6] statement to impeach her testimony in the criminal trial, and such impeachment might have convinced the jury to acquit him on the resisting arrest charge. Stachniak contends that in his criminal trial Officer Shuey testified that she did not see Hayes or Srch strike or beat Stachniak, but in her internal affairs statement taken in February 1989 [7] she stated that both Hayes and Srch kicked Stachniak after his arrest. We reject Stachniak's argument that the Department's non-disclosure of the internal affairs statements harmed his defense to the resisting arrest charge because the alleged kicking of Stachniak by Hayes and Srch occurred *after* Stachniak was under arrest and subdued with hand and anklecuffs. Since Stachniak was certainly resisting arrest when he was thrashing and kicking his arms and legs as the officers attempted to take him into custody, Shuey's internal affairs statement that Hayes and Srch kicked Stachniak after his arrest was immaterial and had no bearing on Stachniak's defense to the resisting arrest charge.

Furthermore, the district court stated:

6. As we have previously noted, Hayes and Srch gave their statements in the internal affairs investigation after Stachniak's criminal trial, thus they were unavailable at the time of the criminal proceedings.

7. At the section 1983 trial in June 1991, Shuey attempted to explain the apparent contradiction between her written statement in the February 1989 internal investigation and her testimony in Stachniak's May 1989 criminal trial. She testified that when she was asked in the criminal trial, "Did you ever observe Sergeant Hayes striking or beating up the defendant [Stachniak]," she responded, "No," because "to strike someone, it is done with the fist." Thus, Shuey claims that her criminal trial testimony was truthful because she did not believe that "kicking" someone is the same as "striking or beating up" someone.

"the testimony on both sides of the case indicates that whatever the situation was in regard to aggravated battery, Mr. Stachniak was resisting arrest. *Most, if not all, of the witnesses who testified for him, his friends who were eye witnesses to the event, testified that the officers were trying to subdue him, handcuff him, and take him into custody. They even testified that Officer Hayes announced that he was under arrest. Their testimony recounts in detail how Mr. Stachniak resisted those efforts.* How could the jury in the criminal case conscientiously have come to a different verdict on the resisting arrest charge than the one they did reach? That is not apparent to me.

\* \* \* \* \* \*

"So what I [am] suggesting to you is that these statements are not as big a deal as the plaintiff [Stachniak] in this case seeks to make them out to be *because when you ask these witnesses what they meant by those statements, it comes out to be something entirely different than the plaintiff might hope it would be.* So I have substantial doubt that the jury in the criminal case would even have regarded the evidence disclosed by these statements as truly affecting the credibility of the police version of what happened in the [station's] lobby."

(emphasis added). Since Stachniak's own witnesses testified that he resisted arrest, the district court concluded that the disclosure of the internal affairs statements would not have affected the jury's determination of Stachniak's guilt on the resisting arrest charge. Based on the evidence, the trial judge concluded that Stachniak failed to establish "any causal relationship between non-production of the statements

and the guilty verdict on the resisting arrest charge...."

Even after viewing the facts in the light most favorable to Stachniak, we agree with the district court that Stachniak failed to establish that the Oak Brook Police Department maintained or enforced a custom or policy of non-disclosure of internal investigation files and failed to show how he was injured by the non-production of the statements. We hold that the district court's action in granting a directed verdict in favor of the Oak Brook Police Department was proper.[8]

## B. STACHNIAK'S PUNITIVE DAMAGES CLAIM

Stachniak argues that the jury erred in failing to award him punitive damages on his excessive force claim. We have held that the scope of punitive damages in § 1983 actions is "controlled by a federal common law of damages imposing uniformity in enforcing the Civil Rights Acts." *Coulter v. Vitale*, 882 F.2d 1286, 1289 (7th Cir.1989). A jury may award punitive damages in § 1983 actions if it finds "conduct motivated by evil intent or callous indifference to the federally-protected rights of plaintiffs." *Id.* at 1289 (citing *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir.1989)). "[P]unitive or exemplary damages may be awarded in appropriate cases under Section 1983 with the specific purpose of deterring or punishing violations of constitutional rights...." *Konczak v. Tyrrell*, 603 F.2d 13, 18 (7th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).

The district court instructed the jury that it could award punitive damages to punish Hayes and Srch for their actions in arresting Stachniak if the officers demonstrated a malicious intention to deprive

---

**8.** Stachniak also argues that the district court erred in granting the directed verdict because the prosecuting attorney was required, pursuant to the Supreme Court of Illinois' Criminal Discovery Rule 412(c), to turn over all reports and files of its internal affairs investigation. Illinois Supreme Court Rule 412(c) states: "Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." Because the prosecutor was unaware of the existence of the internal affairs statements before or during Stachniak's criminal trial, he could not have tendered the internal affairs statements to Stachniak.

Stachniak of his constitutional rights, if they acted with callous disregard for Stachniak's rights, or if they acted with unnecessary harshness or severity. Although the jury determined that Hayes and Srch used excessive force in subduing Stachniak, the jury refused to find that the officers acted maliciously, or with callous disregard for Stachniak's civil rights, or with undue harshness or severity. We give deference to the jury's verdict denying punitive damages, and that verdict will not be set aside if a reasonable basis exists in the record to support the verdict. *Mercado v. Ahmed*, 974 F.2d 863, 866 (7th Cir.1992).

██ The record provides a reasonable basis for the jury's denial of punitive damages. The testimony of both the police officers and Stachniak's own friends reveal that he struggled violently against the officer's attempts to arrest him. Hayes testified that he increased his use of force only after Stachniak had stunned him with a head-butt, and especially after Stachniak grabbed Shuey in a stranglehold. Hayes and Srch also disputed Stachniak's account of the alleged "kicking" in the stairwell. Hayes denied kicking Stachniak at all, and Srch claims she kicked him softly only after he attempted to swing a loose handcuff at her. The jury obviously concluded that the officers used excessive force in reacting to Stachniak's efforts to resist arrest, but the jury was unpersuaded that their conduct was so egregious as to render punitive damages appropriate. Given the conflicting testimony about the fast-moving, violent confrontation which erupted at the police station, we refuse to substitute our judgment for that of the jury's concerning the propriety of punitive damages.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.