1 F.3d 1244
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 JOHN F. STRUCK TRUST, By Linda D. STRUCK, Trustee, Linda D.
Struck and Delores E. Struck,
Plaintiffs-Appellants,
v.
OFFERMAN & COMPANY, INCORPORATED and Keith M. Schermitzler,
Defendants-Appellees.
 No. 92-1882.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 24, 1993.
Decided Aug. 2, 1993.
 
 Before BAUER, Chief Judge, and RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Linda Struck, Delores Struck, and the John F. Struck Trust (the Strucks) appeal from a jury verdict in favor of the defendants, Offerman & Company, Inc., and Keith Schermitzler. The Strucks brought suit against Offerman and Mr. Schermitzler for alleged misrepresentations in the sale of securities. The Strucks alleged violations of federal securities law under section 12(2) of the Securities Act of 1933 and Rule 10b-5 of the Securities Exchange Act of 1934; violations of state securities law under sections 100.18, 551.21, 551.41, 551.59 of the Wisconsin Statutes; and violations of state common law. The Strucks contend that the district court erred in excluding certain testimony from trial, confused and misled the jury by the instructions it chose to give, and erred by answering questions from the jury during its deliberations in a suggestive and prejudicial manner. For the reasons that follow, we affirm.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 John Struck died in 1984 and left fifty percent of his financial assets to his wife, Delores, with the remainder placed in a trust. The Strucks' daughter, Linda, was appointed as the trustee. Delores is the income beneficiary of the Trust and Linda is the remainder beneficiary. Neither Delores nor Linda is a sophisticated investor; during his lifetime, John Struck had overseen both his wife's and daughter's finances. In 1988, Mr. Schermitzler began to advise Delores and Linda about their personal investments and investments for the Trust. At all times pertinent to the sales here on appeal, Mr. Schermitzler was a registered representative of Offerman. All of the sales were effected in Wisconsin.
 
 
 4
 The Strucks contend that they told Mr. Schermitzler they had little knowledge about financial investments and that they were only interested in safe investments that would insulate and protect their principal and provide them with a little more interest than they were currently receiving from their CDs and Treasury Bills. Mr. Schermitzler asserts that they were primarily interested in achieving a better rate of return on their investments than they were currently receiving from their short-term investment instruments. Periodically, Mr. Schermitzler met with Delores and Linda or with Linda alone and suggested various securities in which they could invest both their personal funds and those of the Trust. Among other securities, they bought interests in American Continental Corporation (ACC), VMS, Datronic, USAssets, and the Putnam High Yield Fund. The Strucks contend that Mr. Schermitzler represented to them that these securities were safe investments that were suitable for their financial situation. The Strucks, however, eventually sold each of the securities here at issue at a loss. They believe that the securities were unsuitable for their financial situation and were high-risk investments; furthermore, they contend that Mr. Schermitzler misrepresented to them the riskiness of these securities.
 
 
 5
 Mr. Schermitzler claims that he explained to the Strucks the relationship between rate of return and risk. He also claims that he provided Linda with the prospectus for each security, advised her to familiarize herself with the prospectus, and noted the risk factors to her when he recommended an investment to her, her mother, or the Trust. The Strucks, however, claim that Mr. Schermitzler never explained the risks of the investments and always represented that they were safe and suitable for conservative investors. The Strucks contend that Mr. Schermitzler misrepresented the nature of the various investments, thereby persuading them to invest in several relatively non-liquid and risky ventures including limited partnerships, non-investment grade bonds, and initial public offerings. The Strucks also assert that it was Mr. Schermitzler's regular sales pattern to gloss over the risks of his recommendations and push sales of securities that Offerman was promoting at the time. They also contend that selling high-risk investments to unsophisticated investors was a routine practice for Offerman. Offerman and Mr. Schermitzler deny all of these allegations.
 
 B. District Court Proceedings
 
 6
 The Strucks filed suit in federal district court and brought federal and state securities claims against Offerman and Mr. Schermitzler. The case was tried to a jury on March 9-11, 1992. At trial, the court refused to allow testimony by LaVerne Duerst and Pauline Johnushka, two other investors, that Mr. Schermitzler had also sold them high-risk investments promoted by Offerman after they explicitly told him that they sought only safe investments.
 
 
 7
 The court also refused to allow Linda to testify regarding the manner in which Mr. Schermitzler sold Delores and the Trust shares in ACC. A class action was then pending in Arizona regarding ACC and the judge in that case had ordered that parties to the class action could not litigate related aspects of the claim in other courts, nor could they gain discovery from ACC for purposes of other securities litigation. Linda had not purchased any shares for herself but had purchased shares on behalf of the Trust. Even though Linda was not a party to the class action in her individual capacity but only as trustee, the district court here refused to allow her to testify to Mr. Schermitzler's sales pitch for ACC.
 
 
 8
 At the conclusion of the evidence, the court gave a variety of jury instructions over the Strucks' objections. Additionally, during its deliberations, the jury submitted two written questions to the judge regarding the special verdict form which they were to complete. The Strucks objected to the answers given by the judge and contended that these answers suggested to the jury that it should find in favor of the defendants. The jury did change two of its findings after receiving the judge's answers. Eventually, the jury found in favor of the defendants on all counts. Based on these issues, the Strucks now appeal the jury's verdict, and for the reasons stated below, we affirm.
 
 II
 ANALYSIS
 A. Evidentiary Issues
 
 9
 We first note that, in reviewing the district court's evidentiary rulings, we determine only whether the district court abused its discretion. United States v. Lennartz, 948 F.2d 363, 366 (7th Cir.1991). Under the abuse of discretion standard, we shall not second-guess a trial court's decision as long as it is "in conformity with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one could expect a reasonable trial judge to select." United States v. Koen, 982 F.2d 1101, 1114 (7th Cir.1992). We have also repeatedly recognized that the trial court's balancing of probative value and unfair prejudice is highly discretionary, and the trial court's decision on admissibility thus will be accorded great deference. See, e.g., Geitz v. Lindsey, 893 F.2d 148, 150 (7th Cir.1990). After reviewing the record on the evidentiary issues, we conclude that the Strucks have failed to establish an abuse of the district court's discretion sufficient to mandate a new trial.
 
 
 10
 1. The Duerst and Johnushka[1] proffered testimony
 
 
 11
 The Strucks sought to introduce the testimony of two separate investors who also bought securities from Mr. Schermitzler. These witnesses would have testified to the manner of the sales pitch that Mr. Schermitzler used to convince each of them to buy allegedly high-risk securities. Although both Johnushka and Duerst bought a variety of securities from Mr. Schermitzler, only Duerst bought one of the securities, VMS, at issue in the Strucks' litigation. The district court refused to allow the witnesses to testify regarding Mr. Schermitzler's sales methods; it did, however, allow Duerst to give his opinion as to Mr. Schermitzler's truthfulness.
 
 
 12
 At the pretrial conference, the district court characterized the evidentiary issue as falling primarily under Federal Rule of Evidence 404(b) and required the Strucks to provide a proffer of Duerst's and Johnushka's testimony in order to show that it satisfied the four Rule 404(b) criteria set forth in United States v. Shackleford, 738 F.2d 776 (7th Cir.1984). Tr. at 23-24. Once the Strucks provided the proffer, the court noted that it was concerned that the similarity element in Shackleford was not satisfied. The court was concerned that the proffered testimony related to securities that were dissimilar to those that the Strucks purchased. Tr. at 66. It reserved ruling on the issue, but, once trial began and the plaintiffs had testified, the court held that it would consider admitting only Duerst's testimony regarding VMS, the security that both Duerst and the Strucks had purchased. Tr. at 287. The court did not rule definitively on Duerst's testimony at that point, but it did note that, if Duerst were called only to testify that he had asked for safe securities and that Mr. Schermitzler had advised him that the suggested investments were safe, then the evidence was cumulative to that which had already been presented by the Strucks. Id.
 
 
 13
 At the close of the evidence at trial, the Strucks attempted once more to present Duerst's testimony to the jury. The court disallowed any testimony regarding Mr. Schermitzler's sale of VMS to Duerst. Tr. at 616. The court stated that it was not allowing Duerst's testimony under Rule 404(b). Id. The court went on to state, however, that, after examining the entire record including the proffered testimony, it also found that any probative value was substantially outweighed by the undue prejudice that would occur. Id. Moreover, the court noted that, "[t]here was so much testimony relating to what has occurred here that to attempt to now put in those items which he remembers very well do not appear to be relevant to this particular lawsuit." Id. The court then allowed Duerst to testify to his opinion regarding Mr. Schermitzler's veraciousness.
 
 
 14
 The Strucks contend that the district court erred in excluding all of both Johnushka's and Duerst's testimony concerning Mr. Schermitzler's sales pitch by analyzing the proffered testimony improperly under Federal Rule of Evidence 403.[2] They believe that the district court disregarded the rule that probativeness must be substantially outweighed by unfair prejudice. See Appellants' Br. at 16; Fed.R.Evid. 403. Offerman and Mr. Schermitzler respond that the district court properly excluded the testimony under Rule 404(b) and, therefore, the testimony was properly excluded.
 
 
 15
 Given the deferential standard under which we review evidentiary rulings, we cannot reverse the ruling of the district court. The court employed the appropriate analysis under Rule 404(b). In order to admit evidence of other acts under that rule, a district court must first determine that:
 
 
 16
 (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the [act at issue], (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value is not substantially outweighed by the danger of unfair prejudice.
 
 
 17
 United States v. Wilson, 985 F.2d 348, 352-53 (7th Cir.1993). The district court determined that the Strucks had not established that all of the securities and subsequent sales to Duerst and Johnushka were similar enough to the Strucks' to allow testimony regarding securities that were not at issue in the Strucks' claim. Eliminating all of Duerst's testimony except for that concerning VMS was, therefore, within the court's discretion.
 
 
 18
 Moreover, we believe that the court did not weigh improperly the evidence under Rule 403 and the fourth prong of the requirements under Rule 404(b). The court specifically stated that, after reviewing the record and the proffered testimony, it believed that any probative value of the evidence was substantially outweighed by the undue prejudice that would occur if presented at trial. Tr. at 616. Contrary to the Strucks' contentions, we cannot conclude the court's analysis to have been improper.[3] See Crawford v. Edmonson, 764 F.2d 479, 484 (7th Cir.) (stating that once evidence is deemed probative yet prejudicial, the court must find that the "danger of undue prejudice substantially outweighs the probative value of the evidence before its exclusion will be warranted under Rule 403"), cert. denied, 474 U.S. 905 (1985). Finally, we note that the district court also determined that Duerst's testimony was cumulative. Tr. at 287, 616. This too is a reason to exclude testimony under Rule 403. Certainly after both Delores and Linda Struck had testified regarding the manner in which Mr. Schermitzler had sold securities to them, other testimony regarding his sales pitch could, in the discretion of the trial court, be deemed "a needless presentation of cumulative evidence." See Fed.R.Evid. 403. The district court did not clearly abuse its discretion by disallowing the presentation of this testimony at trial.
 
 2. Linda's proposed testimony regarding ACC
 
 19
 ACC was one of the securities that both the Trust and Delores Struck bought from Mr. Schermitzler. Linda did not purchase any shares for herself but did purchase shares on behalf of the Trust. At the time of trial, a class action regarding this investment was pending in Arizona. The Trust and Delores were parties in that class action. The district court hearing that case had issued an order precluding parties to that action from litigating in another court any claims revolving around the security and from conducting outside discovery against ACC. The Arizona district court entered an order specifically staying all claims in the Strucks' federal court litigation in Wisconsin "only to the extent that the claims involve the offer and sale of securities issued by American Continental Corporation." R. 77 at Ex.A. All issues regarding the offer and sale of ACC were to be resolved only by the Arizona district court. Thus, Delores and Linda, as Trustee, were precluded from testifying about the representations Mr. Schermitzler had made regarding the ACC purchases and his method of sale. Although Linda, as an individual, was not a party to the Arizona litigation, the district court also refused to let her testify about Mr. Schermitzler's sales pitch for ACC.
 
 
 20
 The Strucks contend that the district court gave no reason other than the Arizona court order as to why Linda could not testify regarding the ACC sale. They also contend that, while the district court prohibited their use of ACC evidence, it allowed the defendants to present evidence of the ACC sales contained in Exhibit 291.
 
 
 21
 Neither of these assertions can withstand scrutiny. We agree with Offerman that, although the district court considered the effect the Arizona court order had on Linda's potential testimony, the primary reason it prohibited her from testifying about the ACC sales was because it deemed such testimony cumulative. On the first day of trial, Attorney Edquist noted to the court that Linda's evidence regarding ACC was cumulative and the judge then stated, "And the Court is of that opinion as well, and accordingly there shall be no reference to the ACC transactions by any witness at this trial." Tr. at 69. We believe that the district court was well within its discretion in determining that such evidence would have been unduly duplicative. "Trial courts have discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1408 (7th Cir.1991). The Strucks gave testimony regarding Mr. Schermitzler's sales methods for the securities at issue in their claim, and thus the jury had ample evidence upon which to assess Mr. Schermitzler's sales techniques. The court also stated that this issue could be revisited at a later point in the trial, but the Strucks never again raised the issue.[4]
 
 
 22
 Furthermore, the court did not allow Offerman and Mr. Schermitzler to present evidence of the ACC sales to the jury. Exhibit 291 is the Trustee's Annual Account and Report for 1988 and it was entered into evidence at trial. It was, however, redacted to eliminate reference to ACC and, contrary to the Strucks' contentions, the dollar amount of the purchase and the total dollar amount of investments for that year were also redacted. See Ex. 291 at 0000136. Thus, the district court did not abuse its discretion in limiting Linda Struck's testimony.
 
 B. Jury Instructions
 
 23
 An appellate court must " 'proceed cautiously when asked to set aside a jury's verdict and order a new trial, bound to consume substantial judicial resources, on the ground that the instructions contained erroneous or confusing passages.' " Timmerman v. Modern Indus. Inc., 960 F.2d 692, 696 (7th Cir.1992) (quoting Littlefield v. McGuffey, 954 F.2d 1337, 1344 (7th Cir.1992)). We examine jury instructions in their entirety to assess their fairness and accuracy. Stachniak v. Hayes, 989 F.2d 914, 920 (7th Cir.1993); United States v. Dack, 987 F.2d 1282, 1284 (7th Cir.1993). "We will not reverse the trial court's decision to give a particular jury instruction unless it appears that 'the jury was misled ... [and its] understanding of the issue was seriously affected to the prejudice of the complaining party.' " Stachniak, 989 F.2d at 920 (quoting Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 638 (7th Cir.1991)). The party who raises the alleged error bears the burden of demonstrating prejudice. Dack, 987 F.2d at 1284. Furthermore, we must note that
 
 
 24
 if a party fails to make a specific, timely jury instruction objection during trial, an argument regarding that jury instruction is deemed to be waived for purposes of appeal.... When objecting to a jury instruction, the party's objection must be specific and contemporaneous with the alleged error to give the court an opportunity to correct the error before jury deliberation, if in fact there is error.
 
 
 25
 Stachniak, 989 F.2d at 920; accord Bogan v. Stroud, 958 F.2d 180, 183 (7th Cir.1992).
 
 1. Puffing instruction
 
 26
 Over the Strucks' objection, the district court gave the jury an instruction on "puffing." Specifically, the instruction stated that puffing is not actionable under section 100.18 of the Wisconsin Statutes. Tr. at 768-69. The Strucks now contend that this instruction is contrary to the law and tended to mislead the jury, thus prejudicing the Strucks' case and should not have been given to the jury.
 
 
 27
 The Wisconsin Supreme Court in State v. American TV & Appliance, 430 N.W.2d 709, 712-13 (Wis.1988), held that puffing is not actionable under section 100.18 of the Wisconsin Statutes. Furthermore, it defined puffing as " 'a term frequently used to denote the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.' " Id. at 712 (quoting Better Living, Inc., 54 F.T.C. 648 (1957), aff'd, 259 F.2d 271 (3d Cir.1958)). Thus, statements regarding how "good" an item is or how it is the "best" available are considered to be puffing. See id. At trial there was testimony that, among other representations, Mr. Schermitzler had made similar generalized statements about the securities he was selling. See, e.g., Tr. at 211, 215, 256.
 
 
 28
 The Strucks also contend that puffing is a concept that does not apply to securities claims. However, they cite no case so restricting the concept under Wisconsin law. The authorities from other jurisdictions to which they refer hardly present such a uniform view as to permit us to imply that Wisconsin courts would hold that this instruction is impermissible.[5] Thus, we do not believe the Strucks have demonstrated that this instruction was improper or prejudicial to their case.
 
 2. Suitability instruction
 
 29
 The district court gave the jury an instruction regarding the suitability of the recommended securities. The Strucks objected to the instruction. However, their objection was stated only in general terms. In regard to the form of the instruction, the Strucks' attorney stated that "it's not a necessary instruction to give to the jury in this case. They can use their common sense about whether it was suitable for these particular people." Tr. at 360. In regard to the substance of the instruction, the Strucks' attorney stated merely, "I object to the instruction on suitability in its entirety." Tr. at 507. The Strucks have not invited our attention to any other place in this lengthy record where they made further objection to the suitability instruction.
 
 
 30
 As we noted earlier, "[n]ot only must the party object to the jury instruction, its 'objection must be sufficiently detailed to draw the court's attention to the defect [in the jury instruction]." Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1295 (7th Cir.1987)." Sims v. Mulcahy, 902 F.2d 524, 535 (7th Cir.), cert. denied, 498 U.S. 897 (1990). Furthermore, Federal Rule of Civil Procedure 51 requires a party to state "distinctly the matter objected to and the grounds of the objection." Specificity in objections is necessary in order to appraise the district court of the legal and factual grounds upon which the objection is based. Guerts v. Barth, 892 F.2d 622, 624 (7th Cir.1989) (stating that "while [plaintiff's] objection was distinct enough to inform the court of the matter to which he was objecting, his general objection does not state with any degree of specificity the grounds for his objection").
 
 
 31
 The Strucks objected only generally to the suitability instruction and did not specify sufficiently the legal and factual grounds upon which that objection was based. While we acknowledge that district courts often strongly encourage parties to state succinctly their objections to proposed jury instructions, this requirement does not excuse the parties from adhering to Rule 51. A sufficiently specific objection is required absent a clear showing that the district court arbitrarily prevented such objection from being made. Accordingly, because the Strucks failed to provide a specific objection to the suitability instruction, their argument is waived for purposes of appeal. See Stachniak, 989 F.2d at 920.
 
 
 32
 3. Projections and forecasts instruction and opinions and facts instruction
 
 
 33
 The district court gave the jury an instruction stating that projections or forecasts are actionable for securities fraud only if the person making them did not believe that they were reliable or had reason to believe that they were not reliable. Tr. at 767. The court also gave an instruction on opinion to the effect that plaintiffs could not recover on a misrepresentation claim based on a defendant's expression of an opinion unless the defendant did not believe that his expression was true, or that the opinion was unfounded, or that the opinion was made recklessly or with the intent to mislead. Tr. at 767-68. The Strucks do not claim that the instructions were incorrect statements of the law; rather, they object to these instructions on the ground that forecasts, projections, and opinions were not present in this case. See Tr. at 358. Thus, they believe that the instructions served only to mislead the jury.
 
 
 34
 We do not believe that the Strucks have demonstrated that these instructions prejudiced or misled the jury. Testimony was presented that Mr. Schermitzler had made general statements regarding the securities and their suitability for the Strucks, including the future rate of return on the investments. We agree with Offerman and Mr. Schermitzler that some of Mr. Schermitzler's alleged representations are characterized properly as projections, forecasts of future performance, or opinion. Thus, we cannot say that the district court erred in its estimation that the issue was reasonably raised by the evidence. The district court did not commit reversible error when it gave these instructions.
 
 4. Rule 10b-5 instruction
 
 35
 The district court gave the jury a Rule 10b-5 instruction that contained language stating that good faith is a bar to liability because a necessary element of the fraud is intent to defraud or recklessness. Tr. at 772. The Strucks now contest this language. They claim that good faith was never placed in issue by the defendants and thus this portion of the instruction should not have been given. The Strucks, however, did not make this specific objection at trial. Instead, they objected to the entire Rule 10b-5 instruction on the ground that it was overly long and confusing. See Tr. at 356. They noted only that they preferred the court to give the jury the Rule 10b-5 instruction that they had submitted. Id. This objection did not provide sufficient specific notice of the legal grounds upon which the Strucks objected. Normally such lack of specificity would constitute a waiver. However, our examination of the colloquy at the instructions conference raises some doubt as to whether counsel may have been led to believe that the objection was adequate.[6] Even if there was no waiver, we would hold that the instruction was proper and not prejudicial. Intent is an element in a Rule 10b-5 claim; therefore, any good faith representations made by Offerman and Mr. Schermitzler cannot support such a claim. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 188 (1976). Thus, the district court did not err in giving this instruction.
 
 5. Preliminary instruction
 
 36
 The district court gave a preliminary instruction to which the Strucks also objected. The court stated to the jury that, unless and until outweighed by the evidence presented, it could presume that the transactions at issue were fair and regular, that the ordinary course of business had been followed, and that the law had been obeyed. Tr. at 764. Although they had the burden of proof in this case, the Strucks believe that this instruction provided them with yet another burden that they had to overcome in order to prevail--an inference of honesty and fair dealing. They contend that this instruction gave the jury an impermissible presumption as to which party should prevail.
 
 
 37
 The Strucks' counsel objected to this instruction at trial, stating only: "Presumption of honesty and fair dealing, I think this is just a very pejorative instruction and I object to it. I don't think it's necessary. Of course fraud is not presumed. That's why we're in court to prove the claims." Tr. at 364. This is not a sufficiently detailed objection to preserve the issue for appeal. Nevertheless, we note that we do not believe the district court committed reversible error by giving this instruction. Viewed in its entirety, the instruction does not require the jury to adhere to an impermissible presumption, but restates the plaintiffs' burden of proof.
 
 C. Answers to Jury Questions
 
 38
 In the course of its deliberations, the jury submitted two written questions to the court. The jury asked to be provided with all of the depositions pertaining to the trial and it asked for clarification of a question on the special verdict form because it thought that the question might contain a typographical error. The Strucks objected to the court's responses and now contend that the responses prejudiced their case by suggesting that the jury should find for Offerman and Mr. Schermitzler. After reviewing the jury's questions and the district court's answers, we believe that the responses did not suggest to the jury how certain questions should be answered or how the evidence should be weighed, and thus we do not believe the court acted improperly.
 
 Conclusion
 
 39
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 Although Pauline Johnushka was apparently available to testify at trial, the Strucks never attempted to call her as a witness. Thus, Offerman and Mr. Schermitzler contend that the Strucks have waived objection to evidentiary decisions that could have affected her potential testimony. We need not decide whether waiver applies here because the rulings regarding Duerst's proffered testimony also apply to Johnushka's
 
 
 [2]
 The Strucks also claim that the testimony should have been allowed to show Mr. Schermitzler's habits in conducting sales and Offerman's routine business practices. See Fed.R.Evid. 406. However, the district court did not analyze the proffered testimony under this rule and the Strucks did not establish "the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290, 1293 (7th Cir.1988). Thus, we shall not review the evidence under Rule 406
 
 
 [3]
 The Strucks also assert that evidence cannot be deemed unduly prejudicial unless it would cause the jury to render a verdict tainted by emotion or horror. Appellants' Br. at 20. " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, Advisory Committee Note. Thus, horror or emotion are not the only reasons to find evidence unfairly prejudicial. By admitting evidence of collateral alleged bad acts, the danger of improper jury decision-making would certainly be heightened. Among other reasons, such evidence could have tended to imply that Mr. Schermitzler acted in conformity with his alleged bad acts, an evidentiary use prohibited under Rule 404
 
 
 [4]
 Counsel gave the following reason for admitting the testimony:
 What it does is that it allows her to tell the jury just what happened as it happened without stepping on her toe and being afraid she's going to say something that she shouldn't say. It will help the jury to understand that this was just a continuous relationship between the people, but she will receive no compensation in this Court for anything to do with ACC. And the Court's ruling wouldn't have that result at all. She's--there's no claim made at all for ACC, nor will we infer to the jury that there ought to be some claim for ACC.
 Tr. at 67-68. The district court then noted: "And I believe that that can be revisited if there appears that there is not the sufficient testimony to provide that relationship that Ms. Roggensack believes is necessary to present to the jury." Tr. at 69.
 
 
 [5]
 See, e.g., Howard v. Haddad, 962 F.2d 328, 331 (4th Cir.1992) (collecting cases holding that puffery is not actionable in securities cases); Zerman v. Ball, 735 F.2d 15, 21 (2d Cir.1984) (stating same). But cf. SEC v. First American Bank and Trust Co., 481 F.2d 673, 680 (8th Cir.1973) (expressing skepticism as to whether puffing should be permitted in securities actions)
 
 
 [6]
 "MS. ROGGENSACK: Essentially, your Honor, I think it should just be condensed to the one that I submitted which is concise and to the point
 THE COURT: All right.
 MS. ROGGENSACK: It will take more time than the Court wants to go into for me to read every word I don't like.
 THE COURT: Well, that's appropriate if you do believe that the instruction which you have submitted is that which you believe fulfills the mission of 10b-5, I'll make that notation.
 MS. ROGGENSACK: Thank you.
 THE COURT: That's what I'm interested in hearing, if indeed that is your thought. And that would refer to the explanation of 10b-5 and the essential elements.
 MS. ROGGENSACK: Correct."
 Tr. at 356-57.