**Daniel F. DUANE, Plaintiff–Appellant,**

v.

**Michael P. LANE, James Thieret, Warden, James Buch and Daniel Cowen, Defendants–Appellees.**

No. 88–1350.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1991.

Decided April 1, 1992.

Howard B. Eisenberg (argued), Little Rock, Ark., for plaintiff-appellant.

William H. London, Asst. Atty. Gen., John A. Morrissey (argued), Office of the Atty. Gen., Chicago, Ill., for defendants-appellees.

Before POSNER and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

ENGEL, Senior Circuit Judge.

Daniel Duane, a prisoner at Menard Correctional Center in Illinois, sued four officials of the Illinois Department of Corrections under 42 U.S.C. § 1983, alleging that their "deliberate indifference" to his safety amounted to "cruel and unusual punishment." Finding no genuine issues of material fact, the district court awarded summary judgment in favor of the defendants. For the following reasons, we affirm.

## BACKGROUND

On March 25, 1986, Daniel Duane watched an unidentified arm reach into his cell in the segregated maximum security unit at Menard Correctional Center in Illinois. In its hand it held a cup full of a steaming liquid. The arm then flung the liquid at Duane, who suffered third degree burns of his arm and first degree burns of his stomach. Despite reporting his injuries immediately, Duane waited an hour before seeing a medical technician and three hours before visiting the prison hospital.

[*] Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Although prison officials forbade its use in the segregation unit, Duane hypothesized that the unknown assailant heated the liquid with a "stinger," which is an electrical device used to heat liquids and which is sold at the prison canteen. He also believed that the assailant was among the inmates from the general prison population who were assigned to work details in the segregation unit. While Duane's hypotheses appear quite plausible, our holding by no means assumes their correctness.

Duane sued the Director of the Illinois Department of Corrections, Michael Lane, as well as three department officials who worked at Menard Correctional Center, James Thieret, James Buch, and Daniel Cowen, under 42 U.S.C. § 1983.[1] Duane alleges that these officials violated the Eighth Amendment's prohibition of cruel and unusual punishment, which is applied to the states by the Fourteenth Amendment.

The district court, finding that Duane failed to demonstrate that the defendants were deliberately indifferent to the risk of Duane's injury, granted summary judgment in favor of the defendants. There was evidence, the court explained, that Menard officials forbade the use or possession of stingers in the segregated maximum security unit, and that they took measures to prevent the introduction of all varieties of contraband into the unit. Moreover, the court added, Duane presented no evidence that might prove personal involvement on the part of the defendants.

## ANALYSIS

Summary judgment is appropriate only where two conditions are satisfied: There must be no genuine issue of material fact and the moving party must be entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c). We review a district court's determination that there are no issues of material fact drawing all inferences from the record in the light most favorable to the non-moving party. *Jamison–Bey v. Thieret*, 867 F.2d 1046, 1047 (7th Cir.1989). Where that party bears the burden of proof on an issue, however, it must make specific factual allegations establishing the presence of a genuine issue of material fact. *Id.* We review de novo a district court's determination that a party is entitled to summary judgment as a matter of law. *United Nat'l Ins. Co. v. Entertainment Group, Inc.*, 945 F.2d 210, 212 (7th Cir.1991).

■ Whether prison officials are "deliberately indifferent" to a prisoner's safety is a material fact for purposes of 42 U.S.C. § 1983. Section 1983 imposes liability on state actors who deprive a person of a right secured by the Constitution. Here, Duane seeks recovery from the defendant prison officials on the grounds that their "deliberate indifference" to his safety constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

Duane does not allege that any defendant is the unknown person who threw scalding water on him. Rather, he argues that these prison officials failed to protect him from harm inflicted by his fellow inmates. Specifically, Duane maintains that each defendant was aware of the high incidence of violence, including scaldings, against Menard's segregated prisoners at the hands of inmate workers from the general population. Defendant Cowan, he explained, as the prison official directly responsible for supervising inmates who worked in the segregation unit, was well aware that his charges frequently attacked inmates housed in the segregation unit. Similarly, as Warden and Assistant Warden

---

1. In his pro se complaint, Duane expressly sued each defendant in "his individual and personnel capacity." We are uncertain whether Duane used "personnel" to mean "personal"—thereby emphasizing that he sues the defendants in their individual capacities—or, in the alternative, used the word to refer to their official capacities as "personnel" of the Illinois Department of Corrections. In light of *Hafer v. Melo,* —— U.S.

——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), and *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), which together hold that state officials sued for monetary relief are persons under 42 U.S.C. § 1983 when sued in their personal capacities but not when sued in their official capacities, we treat Duane's action as a personal-capacity suit.

in charge of security in the segregation unit, respectively, defendants Thieret and Buch, Duane argues, routinely reviewed log books and other documents chronicling the frequent attacks on segregated prisoners. Likewise, as Director of Illinois's Department of Corrections, Duane adds, Lane was aware of the violence that occurred in the segregation unit at Menard. Despite their awareness of these risks to prisoner safety, Duane argues, these officials displayed their "deliberate indifference" as they failed to take even trivial prophylactic measures. Specifically, he charges that the defendants failed to ensure that prison guards adequately supervised inmate workers or adequately searched those workers for stingers and other contraband as they entered the segregated unit. Moreover, Duane adds, the defendants took no action even to protect segregated inmates from inmates known to have a history of attacking fellow inmates with scalding liquid.

Although Duane does not allege that any defendant attacked him, his claim nonetheless rests on a recognized constitutional duty: "[T]he eighth amendment requires the state to protect prisoners from each other." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). That duty, however, "does not lead to absolute liability." *Id.* Rather, because the Eighth Amendment speaks only to "punishment," prison officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state. *Id.* (citing *Wilson v. Seiter*, —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) and *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). The requisite mental state, moreover, is intent, or some "functional equivalent," such as "deliberate indifference." *Id.* That is, the officials must "want[ ] harm to come to the prisoner," or, at least, must possess "total unconcern for a prisoner's welfare" in the face of "serious risks." *Id.* Thus, a prisoner must show, at the least, "recklessness," which, for purposes of the Eighth Amendment, entails "actual knowledge of impending harm easily preventable, so that

a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). A prisoner who merely establishes negligence but does not show either actual knowledge of the danger, or danger objectively so great that actual knowledge of the danger can be inferred, cannot prevail. *Id.*

Duane argues that summary judgment was inappropriate because he had established a genuine issue of material fact, namely, whether the defendants were deliberately indifferent to the risk of attack faced by prisoners housed in the segregated maximum security unit. The defendants, he argues, actually knew of the danger. The Menard officials knew that prisoners housed outside the segregation unit possessed stingers, they knew that prisoners occasionally used stingers to heat liquid for purposes of scalding other inmates, and they knew that such attacks, as well as other assaults, frequently occurred inside the segregation unit. Moreover, Duane argues, prison officials could easily have reduced the risk of attack by adequately searching inmate workers who entered the segregation unit and by more closely monitoring their conduct.

Duane is correct that summary judgment is improper where a prisoner asserting an Eighth Amendment claim establishes a genuine question regarding deliberate indifference to his safety on the part of prison officials. He is mistaken, however, in believing that he has made such a showing here. Making all inferences in favor of Duane, as we must, we assume that each defendant knew that segregated prisoners sometimes fell victim to scalding incidents and other violence, typically at the hands of inmate workers from the general prison population. We assume, as well, that the officials could have taken measures to reduce the incidence of such violence. Even if true, these assumptions establish, at the most, negligence. They do not demonstrate deliberate indifference as defined in *Franzen* and *McGill.*

Duane does not allege that any defendant had antecedent knowledge that he would suffer this particular scalding. Nor does he allege that the defendants took no measures to reduce the risk of such violence. He does not challenge, for example, representations made in the affidavit of defendant Buch, who was the Assistant Warden in charge of security at Menard, that it was prison policy to prohibit stingers in the segregated maximum security unit and to search prisoners who entered the unit. Instead, Duane argues that Menard officials could have taken more effective safety measures at little cost. In essence, he challenges the reasonableness of their efforts. Mere negligence, however, does not satisfy the "deliberate indifference" standard. *Wilson v. Seiter,* — U.S. ——, 111 S.Ct. 2321, 2328, 115 L.Ed.2d 271 (1991). Rather, to sustain his constitutional claim Duane must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, *McGill,* 944 F.2d at 347, or a conscious, culpable refusal to prevent harm, *Franzen,* 780 F.2d at 653. He has failed to make that showing. While Duane may well be correct that the Menard officials should have done more to protect prisoners housed in the maximum security unit, the defendants were not *entirely indifferent* to the safety of those prisoners. Presumably, it was to reduce the incidence of violence against those prisoners that they prohibited stingers and searched general population inmates who entered the unit. While important in other respects, the question whether they negligently failed to take more effective measures is, for purposes of the Eighth Amendment, immaterial.

Finally, while Duane mentions a one-hour delay before he received any medical attention and a two-hour delay after that before seeing a physician, he does not allege that anyone intentionally delayed his access to medical care. "In order to state a cognizable claim," under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Accordingly, because Duane makes no allegations whatsoever that speak to the defendants' mental states with regard to his medical care, the delay does not by itself implicate the Eighth Amendment.

In brief, a prisoner alleging that prison officials inflict cruel and unusual punishment must demonstrate that those officials actually wish him harm or, at least, are totally unconcerned with his welfare. Because Duane fails to establish that any defendant possessed this requisite mental state, he necessarily fails to establish a critical element to his § 1983 claim, namely, that the defendants deprived him of his Eighth Amendment or any other constitutional rights. The district court correctly ruled that, as a matter of law, the defendants are entitled to summary judgment.

AFFIRMED.