968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Vincent L. AMMONS, Plaintiff-Appellant,
v.
Kathy ALTERGOT, Nurse, Green Bay Correctional Institution,
Defendant-Appellee.
 No. 90-1713.
 United States Court of Appeals, Seventh Circuit.
 Argued June 17, 1992.
Decided July 8, 1992.
Rehearing and Rehearing En Banc
Denied Aug. 5, 1992.
 
 Before CUMMINGS, POSNER, and MANION, Circuit Judges.
 
 ORDER
 
 1
 Vincent Ammons filed this suit under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment for failure to treat an alleged allergic reaction. The defendant Kathy Altergot, a nurse at the Green Bay, Wisconsin, Correction Institution (GBCI) filed a motion for summary judgment, which the district court granted. Ammons appeals this decision and also claims that the district court erred by not appointing counsel, sua sponte, to represent him in this suit.
 
 I. FACTS
 
 2
 Ammons has a history of allergic-type reactions. According to the medical evidence properly before the district court, he suffers from angioedema and urticaria, diseases which display allergy-like symptoms. Ammons also believes that he suffers from severe allergic reactions to certain types of food, a contention which Altergot refuted by various documents contained in the plaintiff's medical file.[1] In response to Ammons' medical problems on June 29, 1988, Dr. Metodio M. Reyes prescribed the following Benadryl treatment:
 
 
 3
 50 mg 3 times a day as needed for allergy times 2 mos. [M]ay give Benadryl 50 mg IM (intra muscularly injection) for allergic reaction as needed.
 
 
 4
 On August 29, 1988, Ammons collapsed in the GBCI dining hall and was taken on a stretcher to the prison's Health Service Unit (HSU). Defendant Altergot staffed the HSU on the day of this incident. Ammons was visibly shaking and hyperventilating when brought to the HSU. He requested his medication, which Nurse Altergot offered in the customary oral (pill) form. Ammons did not accept this offer. According to Ammons, he was unable to respond due to his deteriorating health condition. Altergot claims that Ammons refused to respond. The nurse then ordered that Ammons be placed in a bed in a locked cell for observation. Ammons claims that no one observed him, and that while in the cell, he stopped breathing on several occasions. Nurse Altergot states that she observed Ammons through the cell window and that she noticed that his shaking considerably decreased after being placed in the cell.
 
 
 5
 After about one-half hour, Ammons began kicking on the cell door, demanding his medication. In the interim, Altergot checked to see what Ammons ate that day and discovered that he had not eaten. Ammons claimed that his seizure was caused by an allergic reaction to foods consumed prior to that date, an occurrence which the nurse explained is impossible. The appellant states that he again requested his medication, a request that the defendant denied in the absence of allergic symptoms. A prison guard was called to the scene. When it was clear that Ammons would not receive a Benadryl pill, he asked to be taken back to his cell.
 
 
 6
 In her affidavit attached to her motion for summary judgment, Altergot explained that the appellant displayed no signs of an allergic reaction such as hives or perspiration. She also believed, based on past personal experience and Ammons' medical file, that he was a malingerer, an inmate who feigned or exaggerated illness in order to receive prescription medication or to change an unwanted condition of confinement, such as cell location. When Altergot placed Ammons in the observation cell, his affliction rapidly subsided. Altergot avers that the doctor's orders required her to exercise her professional judgment to determine whether the medication was necessary under the circumstances. It was her medical opinion that a dosage of Benadryl was not warranted.
 
 
 7
 Ammons argues that his prison medical file clearly demonstrates that he has a history of seizures based on allergic or allergic-type reactions. He notes that this defendant administered oral Benadryl on other occasions even though, in her opinion, he did not display signs of an allergic reaction. The fact of prior treatment coupled with her inaction in this situation, Ammons contends, places a material fact in dispute regarding Altergot's true motivation and her diagnosis of his condition. He further argues that even if his belief that he has food allergies is erroneous, he does have an illness that displays symptoms akin to allergies. In light of his medically documented diseases and the doctor's orders, the plaintiff asserts that Altergot had no discretion to refuse his initial request for an injection of Benadryl, and, at any rate, Altergot was required to administer some form of treatment.[2]
 
 II. ANALYSIS
 A. The Eighth Amendment Claim
 
 8
 Summary judgment is appropriate when there are no issues of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment de novo, "drawing all inferences from the record in the light most favorable to the non-moving party." Duane v. Lane, 959 F.2d 673, 675 (7th Cir.1992). A court may not weigh the evidence when ruling on a motion for summary judgment, but must determine whether there "is a genuine issue of fact for trial." Williams v. Anderson, 959 F.2d 1411, 1413 (7th Cir.1992).
 
 
 9
 In order to succeed on an Eighth Amendment claim, the appellant must demonstrate both that his medical condition is serious and that prison officials act with "a sufficiently culpable state of mind." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992) (quoting Wilson v. Seiter, 111 S.Ct. 2321 at 2326, 2329 (1991)). The constitution does not protect against "mere inadvertence or negligence in diagnosis or treatment." Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Instead, "a prisoner alleging that prison officials inflict cruel and unusual punishment must demonstrate that those officials actually wish him harm or, at least, are totally unconcerned with his welfare." Duane, 959 F.2d at 677. Deliberate indifference must be shown. Wilson, 111 S.Ct. at 2326-27.
 
 
 10
 On this record, we cannot be sure that Ammons' condition seemed not to be serious. It is undisputed that he was brought to the HSU on a stretcher and that whether or not he was malingering, he was apparently hyperventilating and shaking. His medical records indicate that he suffers from diseases whose symptoms are akin to allergic reactions, such as hives and perspiration. Medical personnel were put on notice of the condition and ordered to dispense Benadryl if needed in response to Ammons' allergies. In light of these facts, we cannot agree with the appellee's contention that Ammons' illness was not definitely serious even though he was not exhibiting an ordinary allergic reaction.
 
 
 11
 However, the district court correctly concluded that Ammons cannot show deliberate indifference. Altergot's affidavit stated that in her medical opinion, an intramuscular injection was not warranted, and she offered a Benadryl pill. She also asserted from prior observation that she believed Ammons was a malingerer. Indeed, after being placed in the cell, Ammons' shaking subsided and his condition improved, as noted through her observation via the window in the cell door. Altergot's belief that Ammons was malingering if honest but erroneous, "while crass and unprofessional, would not amount to the deliberate or even reckless infliction of punishment and so would not be actionable under the Constitution." Hughes v. Joliet Correctional Center, 931 F.2d 425, 429 (7th Cir.1991). The appellant had not eaten any food that day and his symptoms on this occasion were hardly allergic so that his insistence on a Benadryl shot was unjustified. Finally, Altergot established that Ammons was constantly under observation through a window in the door while placed in the locked HSU cell, either by herself or her supervisor.[3] In these circumstances Altergot's actions were at most negligent. "Ordinary negligence and even 'gross negligence' in the tort sense are not enough." McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir.1991) (citing Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985)). Even if Altergot's professional judgment was error, her conduct did not rise to the level of criminal recklessness.
 
 B. Representation by Counsel
 
 12
 Ammons next argues that the district court should have requested counsel to represent him on his claims, pursuant to 28 U.S.C. § 1915(d). He points out that at the summary judgment stage, he lacked the requisite knowledge and skills to present admissible evidence to the court. His contention appears to be supported by the district court's refusal to consider the uncertified and unauthenticated documentary evidence he presented. In Hughes, this Court warned:
 
 
 13
 a district judge must be alert to the pitfalls that confront laymen in dealing with nonintuitive procedural requirements applied in a setting of complex legal doctrine.... [W]ithout the assistance of a lawyer [Hughes] was likely to be tripped up by his opponents' lawyers.
 
 
 14
 931 F.2d at 429.
 
 
 15
 There is, however, a glitch in Ammons' argument: he never asked the district court to request a lawyer to represent him. Ammons concedes that this Court has never held that a district court must sua sponte appoint counsel to indigent civil litigants. Nor has he cited authority from any other court which would support this proposition. We have not uncovered any such precedent. Section 1915(d) provides that a "court may request an attorney to represent any such person unable to employ counsel." Clearly this language does not preclude a district court, in its discretion, from sua sponte requesting an attorney to represent an indigent litigant. However, the statute does not require a court to consider appointing counsel absent a request from the litigant. It would be unwise to place such an onerous requirement on district court judges. We hold that in the absence of a request from the indigent litigant, the trial court is under no duty to consider the issue sua sponte.
 
 For the foregoing reasons, the judgment is
 
 16
 AFFIRMED.
 
 
 
 [1]
 Ammons attached a great deal of documentation to his motion in opposition to summary judgment which suggest that he is allergic to several types of food. However, the district court refused to consider this evidence, finding that the documents were neither authenticated or certified and, thus, were inadmissible. Ammons does not contest this evidentiary ruling, but instead argues that his inability to understand such rules of evidence supports his argument that the court should have appointed counsel
 
 
 [2]
 The defendant argues that in the district court Ammons only challenged the refusal to administer the intramuscular injection, not the failure to provide any treatment. Our review of the record shows that Ammons primarily argued that Nurse Altergot was required to give this medication by injection. However, he also complained that no treatment was given
 
 
 [3]
 Ammons claimed that he was not observed. The defendant, however, stated in her affidavit that Ammons' back was to the cell door, so he could not know whether or not he had been observed through the window in the cell door. Ammons offered no evidence to counter this statement