9 F.3d 112
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Early GLENN, Plaintiff-Appellant,
v.
Warden Jim GREER, et al., Defendants-Appellees.
 No. 92-1917.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 26, 1993.*
Decided Nov. 5, 1993.
 
 Before POSNER, Chief Judge, and RIPPLE and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 This civil rights action arose out of Early Glenn's removal from the protective custody unit at the Menard Correctional Center. Glenn alleged that on April 20, 1988, he was voluntarily admitted to the protective custody unit after being attacked by two inmates. Less than five weeks later, on May 24, 1988, Glenn was involved in a fight between other inmates in the protective custody unit. As a result of his involvement in the fight, Glenn was removed from the protective custody unit and placed into disciplinary segregation for thirty days. On June 23, 1988, Glenn was released from segregation and placed into the general population. Glenn told the defendants that his life would be in danger if he stayed in the general population, though he did not identify which inmates would harm him. The defendants refused Glenn's request to return to the protective custody unit. Two days later, on June 25, 1988, Glenn was assaulted by an unknown inmate who broke Glenn's jaw.
 
 
 2
 Based on these allegations, Glenn brought an action under 42 U.S.C. Sec. 1983 alleging, inter alia, that the defendants violated his rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. On de novo review of the record, the district court adopted the reports and recommendations of the magistrate judge and entered judgment in favor of the defendants. We affirm.
 
 
 3
 Glenn first contends that the defendants deprived him of his right to due process when they removed him from protective custody without first giving him a copy of their written decision to do so. Glenn relies upon sections 501.320 and 501.330 of the Illinois prison regulations for support. Ill.Admin.Code tit. 20, Secs. 501.320, 501.330 (1992). Section 501.320, which concerns the procedures for placement in protective custody, provides that if an inmate requests protective custody, his reassignment from the general population to protective custody must be accomplished as quickly as possible. Ill.Admin.Code tit. 20, Sec. 501.320(a). Within ten working days of the inmate's placement in protective custody, he must appear before the Assignment Officer, who makes a recommendation concerning the inmate's need for continued protective custody. Ill.Admin.Code tit. 20, Sec. 502.320(b). Section 501.320 sets forth factors the Assignment Officer may consider in making his recommendation. Id. If the Chief Administrative Officer decides that the inmate should be removed from protective custody, the inmate must be served with a written copy of the decision. Ill.Admin.Code tit. 20, Sec. 501.320(c). If the inmate grieves the decision, he must remain in protective custody pending the disposition of his grievance. Ill.Admin.Code tit. 20, Sec. 501.320(d).
 
 
 4
 Section 501.330, which concerns periodic reviews of inmates in protective custody, provides that each protective custody inmate must be interviewed by a correctional counselor at least once every thirty days to determine the need of continued protective custody. Ill.Admin.Code tit. 20, Sec. 501.330(a). If the counselor decides that an inmate no longer needs to be in protective custody, he submits a written request for reevaluation to the Assignment Officer. Ill.Admin.Code tit. 20, Sec. 501.330(b). In reviewing this request, the Assignment Officer may interview the inmate and may consider any other relevant material, including the factors set forth in Section 501.320(b). Ill.Admin.Code tit. 20, Sec. 501.330(c). If the Chief Administrative Officer decides that the inmate should be removed from protective custody, a copy of the decision must be served on the inmate. Ill.Admin.Code tit. 20, Sec. 501.330(d). An inmate who grieves this decision must remain in protective custody while the grievance is pending.
 
 
 5
 While the due process clause of the Fourteenth Amendment itself does not create a protectible liberty interest in protective custody, state law may do so. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-62 (1989); Smith v. Shettle, 946 F.2d 1250, 1252 (7th Cir.1991). A protectible liberty interest is created when a state statute or regulation establishes " 'substantive predicates' to govern official decision-making" and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met." Thompson, 490 U.S. at 462.
 
 
 6
 Neither regulation cited by Glenn creates a protectible liberty interest in remaining in protected custody. See Kellas v. Lane, 923 F.2d 492 (7th Cir.1990) (holding that Illinois prison regulations governing protective custody do not create a liberty use of mandatory language, "these guidelines are directed toward the prison officials and, thus, do not create a due process claim of entitlement on the inmates' behalf." Id. at 495. Because the prison officials maintain the discretion to remove an inmate from protective custody for a reason that does not appear in the prison regulations, or for no reason at all, Glenn has no liberty interest enforceable under the Constitution. Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Smith, 946 F.2d at 1252. That the regulations at issue require an inmate to be personally served with a copy of the written decision to remove him from protective custody does not alter this result. An inmate's expectation that certain procedures will be followed before action is taken is not a liberty interest protected by the due process clause. Olim, 461 U.S. at 250-51; Smith, 946 F.2d at 1254; Shango v. Jurich, 681 F.2d 1091, 1100 (7th Cir.1982).
 
 
 7
 Glenn next contends that the defendants deprived him of his right to be free from cruel and unusual punishment by refusing to allow him to return automatically to protective custody despite a known risk to his physical safety. Prison officials have a duty under the Eighth Amendment to protect inmates from one another. King v. Fairman, 997 F.2d 259, 261 (7th Cir.1993). This duty leads to liability, however, only where prison officials act with "deliberate indifference" to an inmate's safety. McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir.1991), cert. denied, 112 S.Ct. 1265 (1992). "[T]o sustain his constitutional claim, [the inmate] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." King, 997 F.2d at 261 (quoting Duane v. Lane, 959 F.2d 673, 677 (7th Cir.1992)) (citations omitted). Ordinary negligence and gross negligence are not enough. Id.; McGill, 944 F.2d at 348; Duane, 959 F.2d at 677.
 
 
 8
 The district court properly gave summary judgment to the defendants because there was no genuine issue of material fact concerning the propriety of their motives or actions. Glenn failed to produce any evidence that the defendants acted with "deliberate indifference" to his safety needs in refusing to return him to the protective custody unit. The record shows that Glenn was returned to the general prison population because he was discharged from disciplinary segregation, and he did not sign back into protective custody, as required by institutional policy. The record also establishes that Glenn could have asked to be placed on "deadlock" status in his general population cell yet he did not avail himself of that option either.
 
 
 9
 Glenn further contends that the magistrate judge violated 28 U.S.C. Sec. 636 when he disposed of the case without Glenn's consent. The reference of this case to the magistrate judge was not made under section 636(c), which requires the parties' consent. 28 U.S.C. Sec. 636(c); Jaliwala v. United States, 945 F.2d 221, 223-24 (7th Cir.1991). Rather, the reference was made under section 636(b)(1)(B), which does not require the consent of the parties because the magistrate judge's recommendation receives de novo review from the district court. 28 U.S.C. Sec. 636(b)(1)(B); Jackson v. Cain, 864 F.2d 1235, 1242 (5th Cir.1989); Archie v. Christian, 808 F.2d 1132, 1135 (5th Cir.1987); Orpiano v. Johnson, 687 F.2d 44, 46 (4th Cir.1982).
 
 
 10
 Glenn finally contends that the magistrate judge abused his discretion in denying Glenn's repeated motions for the appointment of counsel because he had limited litigation skills. We discern no abuse of discretion in the denial of the motions. See Farmer v. Haas, 990 F.2d 319, 321-22 (7th Cir.1993).
 
 
 11
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record