Floyd B. GIBBS, Plaintiff–Appellant,

v.

James A. FRANKLIN, Ronald A. Pitcock, Dickie D. Niece, et al., Defendants–Appellees.

No. 93–1907.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1993.

Decided March 18, 1994.

Richard A. Waples (argued), Hamid Kashani, Indianapolis, IN, for plaintiff-appellant.

Wayne E. Uhl, Deputy Atty. Gen. (argued), Federal Litigation, Indianapolis, IN, for defendants-appellees.

Before COFFEY and EASTERBROOK, Circuit Judges, and CURTIN, District Judge.*

COFFEY, Circuit Judge.

Prison inmate Floyd B. Gibbs, after being beaten by fellow prisoners, sued four guards at the Indiana State Prison Farm in Putnamville, Indiana (James A. Franklin, Ronald A. Pitcock, Dickie D. Niece, and Arthur P. Like) in their individual capacities under 42 U.S.C. § 1983. Gibbs's suit alleged that the four guards witnessed the beating and refused to intervene, thereby violating his eighth amendment right to be free of cruel and unusual punishment. A jury returned a verdict for the defendants. Gibbs appeals, arguing that the court's jury instruction concerning the meaning of "deliberate indifference" was erroneous. We affirm.

## FACTS

This case is presented on appeal from an "Agreed Statement of the Case and Record" prepared for use on appeal pursuant to Rule 10(d) of the Federal Rules of Appellate Procedure. Our recitation of the facts contained herein is summarized and taken from a document contained in the record entitled "Specific Facts Proved or Sought to Be Proved," signed by the respective attorneys as well as the court.

Gibbs testified that as he was walking from the prisoners' dining hall to his dorm room, a number of inmates called him over, accused him of using racial slurs, and that shortly thereafter, five or six of the inmates attacked him and savagely beat him for about five to ten minutes as Officers Franklin and Pitcock were nearby. Some of the prisoners testified that during the attack, other officers, Niece and Like, were "in the yard area near the attack." Gibbs stated that when the prisoners who had accused him of using racial slurs raised their voices and became verbally abusive to him, he allegedly made eye contact with Officer Franklin, hoping that Franklin would intervene, but Franklin did not. According to Gibbs, another prisoner, Warriner, inquired of Officer Niece during the attack whether he was going to help Gibbs, but the guard turned away. Gibbs alleged that none of the officers came to his aid.

* Hon. John T. Curtin, of the Western District of New York, sitting by designation.

The corrections officers' account of the incident was quite different. Initially, they note that Gibbs admitted on cross-examination that he had been drinking homemade "wine" during the morning before the incident, and that after the attack Gibbs's blood alcohol content was 0.179 percent. They observe that Gibbs also admitted during cross-examination to serious health problems before the incident, including a prior head injury, seizures for which he was still taking medication, the removal of half of his stomach and gall bladder, liver problems, a broken hip, low blood sugar, ataxia (a coordination problem), as well as serious drug and alcohol abuse.

Officer Niece testified that he and his fellow guard Like were returning to the dormitories after lunch when they encountered a shoving match between some inmates who had been playing basketball. According to Niece, while "attempting to gain control" of the basketball-playing inmates, he heard shouting from across the prison yard and saw a large number of inmates (collectively estimated as being between 100 and 300) forming a crowd. Niece, observing the crowd, testified that he immediately left Officer Like in charge of the basketball players and that he proceeded into the fracas and reached Gibbs within fifteen to twenty seconds after Gibbs was attacked, as stipulated in the parties' agreed statement of facts. Niece told another officer to call for a stretcher.

Officer Like gave testimony that he saw Officer Niece move "toward [Gibbs] ... [and that] Niece did not hesitate to wade into the crowd surrounding [Gibbs]." After the basketball players managed to break free, Like also made his way through the crowd (fifteen seconds) to reach Gibbs. Officer Franklin stated that during his patrol of the prisoners' dining room, he received a "10–10" call on his radio, indicating a disturbance in progress. Franklin cut through the crowd in a matter of seconds and found Gibbs injured and lying on his side. Officer Ronald Pitcock testified that at the time of the incident, he was on the other side of the highway walking in the direction of the prison kennel to feed the dogs and had no knowledge of the fight until some of the other inmates asked him about it after lunch. The physician who examined Gibbs after the incident testified that Gibbs was suffering from a head injury with a probable concussion and was under the influence of alcohol. Other than as indicated above, the record before us fails to disclose the layout of the prison yard or any other pertinent facts as to the approximate location of the assault on Gibbs in relation to the defendant officers' positions in and around the prison compound at the critical time.

Gibbs argued that the prison guards knew Gibbs was being assaulted, that "[a] corrections officer who personally witnesses a beating of an inmate by other inmates bears an affirmative duty to intervene and stop the inmates who are doing the beating[,]" that the defendants "[d]eliberately ... failed to protect [him] from assault by other inmates," and that by failing to come to his aid they were responsible for him suffering cruel and unusual punishment. Over Gibbs's objection, the court instructed the jury on the issue of deliberate indifference as follows:

> Prison officials have a Constitutional duty to provide for prisoners' physical safety, including protecting them from each other. Thus, prison officials may "inflict" injuries on prisoners, under the Eighth Amendment, either by directly causing the injuries themselves, or, as alleged in this case, by failing to prevent other prisoners from causing the injuries.

> Injury constitutes "punishment" under the Eighth Amendment only if prison officials act, or fail to act, with actual intent to inflict the injury on a prisoner or with deliberate indifference to a prisoner's welfare. Ordinary negligence, lack of due care, and even gross negligence are not enough to establish a violation of the Eighth Amendment....

> A prison official acts, or fails to act, with "deliberate indifference" to a prisoner's welfare when he does so with actual knowledge of impending injury to a prisoner which is readily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the prison official's failure to prevent the injury.

Therefore, in order to establish a violation of his Eighth Amendment rights, the plaintiff must prove the following elements as to each defendant:

First, the defendant refused to prevent or stop the attack on him by other prisoners, *and*

Second, either,

(1) the defendant specifically intended thereby to allow injury to be inflicted on the plaintiff, *or*

(2) the defendant had actual knowledge of impending injury to the plaintiff from the attack and that the injury, or further injury, was readily preventable.

The jury returned a verdict in favor of each of the four defendants. Gibbs appeals.

## ISSUE

The sole issue presented is whether the instruction quoted above should have used the term "reasonably preventable" rather than "readily preventable." As we explain below, "readily preventable" accurately reflects the state of the law, whereas "reasonably preventable" does not. *McGill v. Duckworth*, 944 F.2d 344 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).

## DISCUSSION

### Standard of Review

■ Gibbs contends that the court's instructions constitute reversible error. When faced with a challenge to a given jury instruction, we have stated:

[A]ppellate review of jury instructions is limited. *See Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1117 (7th Cir.1983). *When reviewing the adequacy of jury instructions, the court should 'construe them in their entirety and not in artificial isolation.' Id.* at 1117. *Reversal is only mandated if the jury's comprehension of the issues is so misguided that a litigant is prejudiced. New Burnham Prairie Homes v. Burnham*, 910 F.2d 1474, 1483 (7th Cir.1990) (emphasis added). *"[W]e must look to the instructions as a whole*, in a common sense manner, avoiding fastidiousness, inquiring whether the

correct message was conveyed to the jury reasonably well." *Wilk v. American Medical Ass'n*, 719 F.2d 207, 218 (7th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984) (emphasis added). We will not reverse the trial court's decision to give a particular jury instruction unless it appears that 'the jury was misled ... [and its] understanding of the issue was seriously affected to the prejudice of the complaining party.' *Northbrook Excess & Surplus v. Procter & Gamble*, 924 F.2d 633, 638 (7th Cir.1991) (citations omitted).

*Stachniak v. Hayes*, 989 F.2d 914, 920 (7th Cir.1993).

The plaintiff-appellant contends without citation of authority that the phrase "readily preventable" should not have been used in the instruction because, he argues, a prison guard has a duty to take reasonable steps to protect a prisoner even if the impending injury is not "readily" preventable. He also claims that "the 'readily preventable' standard is a test for inferring a defendant prison guard's knowledge of danger to a prisoner. This standard does not apply when the impending harm is open and obvious and the attack occurs in the presence of the prison guard."

■ "The Eighth Amendment, which applies to the States through the due process clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962), prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, ——, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). The prohibition against the infliction of cruel and unusual punishment requires the state to protect prisoners from each other. *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir.1992); *McGill*, 944 F.2d at 347. But because "[t]he eighth amendment addresses only punishment[,]" *id.*, and because "punishment cannot be inadvertent," *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985), "the infliction of suffering on prisoners can be grounds to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in

the criminal law sense." *Id.* "[R]ecklessness in the criminal law sense implies an act so dangerous that the defendant's knowledge of the risk can be inferred." *Id.* at 652. Mere "indifference" on the part of a prison guard to one inmate's attack on another is insufficient to establish liability under the eighth amendment; the law requires that the guard's indifference to the attack must also have been "deliberate." *Id.* at 653.

■ "Because the Eighth Amendment speaks only to 'punishment,' prison officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state": intent or deliberate indifference. *Duane,* 959 F.2d at 676 (citing *McGill,* 944 F.2d at 347). In other words, before the prison guards may be found to have violated the eighth amendment, the plaintiff must establish by a preponderance of the evidence that the guards had knowledge of the attack, that they failed to prevent or stop the attack, and that by failing to prevent or stop the attack they "wanted harm to come to the prisoner." *Id.* A guard's deliberate failure to act when he knows of an impending harm easily preventable suggests "that the officials actually want the prisoner to suffer the harm." *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).

■ When viewed in their entirety the district judge's instructions in this case accurately state the law as established in *Franzen, McGill, Duane,* and *Jackson.* The jury instructions clearly stated that the guards would be liable if they "act[ed], or failed to act, with intent to inflict the injury on the prisoner or with deliberate indifference to a prisoner's welfare." The court also correctly stated that a guard acts with "deliberate indifference" when he acts, or fails to act, "with actual knowledge of impending injury to a prisoner which is readily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the prison official's failure to prevent the injury." The phrase "readily preventable" was taken verbatim from *McGill,* 944 F.2d at 349 ("McGill had to show that the defendants had actual knowledge of the threat [his rapist] posed, that the rape was readily preventable, but

that instead of intervening the guards allowed [the rapist] to proceed"). The language of *McGill* was drawn from *Franzen,* 780 F.2d at 653. Thus, the court correctly instructed the jurors that Gibbs was required to demonstrate that the defendants had knowledge of the attack, that they "failed to prevent or stop the attack on [Gibbs] by other prisoners," and that the defendants "specifically intended thereby to allow injury to be inflicted on the plaintiff" or that they "had actual knowledge of impending injury to the plaintiff from the attack and that the injury, or further injury, was readily preventable." We hold that the court's jury instructions on the issue of the defendant's intent were proper and thus Gibbs was not prejudiced.

■ We disagree with Gibbs's argument that the instruction should have used the objective phrase "reasonably preventable." The issue is not whether Gibbs's injury was "reasonably" or "readily" preventable; rather, the issue is whether the guards *intended* that Gibbs be injured by their failure to timely intervene; i.e., whether they (the guards) were "deliberately indifferent" to the attack on Gibbs. If it could be established that the guards had prior actual knowledge of an impending attack that was readily preventable, their failure to timely intervene in Gibbs's beating would suggest that they intended that Gibbs be harmed. *See Franzen* and *McGill.* The judge's instruction went directly to the issue of the defendants' intent to inflict punishment, as it should have. Both *Franzen* and *McGill* expressly rejected Gibbs's argument that in eighth amendment cases a defendant's intent must be determined by reference to objective standards of reasonableness. Since the trial judge's instruction did not mislead the jury or prejudice Gibbs, we affirm the judgment in favor of the defendants.

AFFIRMED.