Michael D. TORRENCE, Plaintiff,

v.

John MUSILEK, et al., Defendants.

No. 92 C 3678.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 3, 1995.

Michael D. Torrence, Galesburg, IL, pro se.

Jennifer Marie Link, Illinois Attorney General's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are defendants John Musielak's [1] ("Musielak"), Jeanette Johnson's ("Johnson"), and Kenneth R. Briley's ("Briley") (collectively, "defendants") motion for summary judgment pursuant to FED.R.CIV.P. 56(b). As set forth fully below, the court grants defendants' motion for summary judgment.

### I. BACKGROUND [2]

Plaintiff Michael Torrence ("Torrence") currently is a prisoner at Stateville Correctional Center, in Joliet, Illinois. In March 1992, at the time of the incident on which Torrence's complaint is based, Torrence was a segregation inmate at Joliet Correctional Center ("Joliet"), in Joliet, Illinois, where Musielak was a correctional officer, Johnson was a correctional sergeant, and Briley was a correctional lieutenant.

Early in the morning on March 1, 1992, Torrence was outside in the north segregation yard. Musielak was in the guard tower overlooking the yard. Three other inmates—Hughes, Davidson, and Torrence's cellmate—were in the yard with Torrence. Hughes and Davidson began making derogatory remarks about and to Torrence, supposedly because of a rumor that Torrence was a snitch or stool pigeon.

Torrence and Hughes began fighting. Musielak yelled from the guard tower at them to stop, but they continued. The fighting stopped when Hughes told Torrence that he had had enough, and Torrence walked away to retrieve his coat and cigarettes. As Torrence bent over to pick up his cigarettes from the ground, Davidson punched Torrence in the jaw, and Torrence and Davidson began to fight. Hughes jumped in to aid Davidson, and Hughes and Davidson beat Torrence to the ground and kicked him in the head, ribs, and buttocks. Hughes and Davidson stopped their assault when Torrence was lying on the ground with his head, nose, lip, and ear bleeding. After a few minutes, Torrence got up, went over to his cellmate, and said, "I don't believe this shit happened to me." Either Hughes or Davidson thought that Torrence had said something about them, and they assaulted Torrence a third time.

After the third fight, Torrence went under the guard tower and asked Musielak to call Torrence's unit lieutenant to get Torrence off the yard. Only an officer with the rank of lieutenant or above could escort inmates assigned to segregation. (Defs.' Mot. for Summ. J., at 3 ¶ 14.) [3] Musielak said that he had called the lieutenant twice already and that there was nothing else he could do. Then, Johnson, who was taking care of a protective custody unit of inmates, walked out of a cell house unit into the yard. Torrence asked Johnson to get him off the yard, but she shook her head and walked back into

---

1. Defendant John Musielak's name initially was spelled incorrectly in the caption of this case, but is spelled correctly throughout this memorandum opinion and order.

2. Unless otherwise indicated, the facts are taken from plaintiff Michael Torrence's complaint and deposition. Defendants' statement of uncontested facts, in defendants' motion for summary judgment, sets forth additional facts not reflected in plaintiff's complaint and deposition and some of which plaintiff disputes. Since the court finds that these additional facts have no bearing upon the court's decision, the court will decide defendants' motion based on plaintiff's depiction of the incident at issue.

3. Torrence does not contest or contradict this fact, which the court takes from defendants' statement of uncontested facts in defendants' motion for summary judgment. Therefore, the court will accept it as true.

the cell house unit. Johnson came back out about five minutes later, and Torrence asked her if she would stand there with her radio so that she could call someone if the inmates assaulted Torrence again. Johnson told Torrence that she had no authority over what was going on in the segregation yard. However, she remained in the yard for a minute, and then left.

Some other prisoners walked by the yard, and Torrence yelled for them to get Lieutenant Miller to get Torrence off the yard. When Lieutenant Miller stepped out of the cell house unit, Torrence asked him to remove Torrence from the yard. Lieutenant Miller said that there was nothing he could do, because he was the lieutenant in a different cell house. At that moment, Briley and other officers arrived and escorted Torrence to the health care unit. Torrence estimated that at least 30 minutes passed between the first fight and the moment Briley and the other officers arrived.

Before he was assaulted on March 1, 1992, Torrence had no idea that Hughes and Davidson were angry at him, or that anyone would be trying to attack him. Thus, Torrence had not complained to anyone about potentially being in danger or requested to be put in protective custody.

## II. *DISCUSSION*

### A. *Standard of Review*

■ A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). A genuine issue of material fact exists only where there is sufficient evidence favoring the non-moving party to support a jury verdict for that party. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Natl. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). If the evidence presented by the non-movant is merely colorable or is not sufficiently probative, summary judgment is appropriate. *Wolf v. Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### B. *Failure to establish "deliberate indifference"*

Defendants contend that Torrence has not established and cannot establish that defendants were deliberately indifferent to Torrence's safety, and therefore that judgment should be entered in favor of defendants as a matter of law.

■ State prison officials have a duty to protect prisoners from each other under the Eighth Amendment's prohibition of cruel and unusual punishment. *King v. Fairman,* 997 F.2d 259, 261 (7th Cir.1993) (citing *Duane v. Lane,* 959 F.2d 673 (7th Cir.1992); *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir.1991), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992)). Prison officials are not absolutely liable for prisoners' safety, however, because the Eighth Amendment pertains only to punishment, *King,* 997 F.2d at 261, and whether an injury inflicted by a fellow inmate constitutes punishment by a prison official depends upon the mental state of the official. *McGill,* 944 F.2d at 347. The requisite mental state is intent or its functional equivalent, generally referred to as deliberate indifference or recklessness. *Id.* "That is, the official[ ] 'must want[ ] some harm to come to the prisoner,' or, at least, must possess 'total unconcern for a prisoner's welfare' in the face of 'serious risks.'" *Duane v. Lane,* 959 F.2d 673, 676 (7th Cir.1992) (quoting *McGill,* 944 F.2d at 347). At the very least, a prisoner must show that an official had "'actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Duane,* 959 F.2d at 676 (quoting *Duckworth v. Franzen,* 780 F.2d 645, 653

(7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). Negligence, or even gross negligence, is not sufficient. *Duane,* 959 F.2d at 676, 677; *King,* 997 F.2d at 262.

■ Viewing the facts and reasonable factual inferences in favor of Torrence, the court finds that no genuine issue of material fact exists regarding whether defendants showed deliberate indifference for Torrence's safety; they did not.

A prisoner typically proves that prison officials had actual knowledge of impending harm to the prisoner by showing that he complained to prison officials about a specific threat to him. *McGill,* 944 F.2d at 349. In the present case, Torrence acknowledges that he had no idea that any threat to his safety existed before he was assaulted by Hughes and Davidson, and therefore did not complain to prison officials about any specific threats.

Furthermore, the facts recounted above show that, at most, defendants acted less quickly than perhaps they should have. Musielak was aware of the fighting and yelled at the inmates to stop, and called twice for a lieutenant to remove Torrence from the yard. Musielak told Torrence that there was nothing else he could do. Johnson also was aware of the fighting and twice went out into the yard, but she was in charge of another unit at the time of the fighting, and told Torrence that she had no authority over what was going on in the segregation yard. In addition, at the time Johnson arrived in the yard, Torrence was not being assaulted, and was not assaulted again.

Moreover, Musielak and Johnson were below the rank of lieutenant, and Briley was a lieutenant. Thus, Musielak and Johnson were not permitted to remove Torrence from the yard; only Briley had authority to escort Torrence from the yard. Briley, accompanied by other officers, eventually arrived and escorted Torrence to the prison's health care unit.

These facts leave no doubt that defendants lacked the requisite mental state to have "punished" Torrence in violation of the Eighth Amendment by failing better to protect him. Nothing in Torrence's complaint or deposition suggests that defendants intended for Torrence to be assaulted and injured or were deliberately indifferent to whether he was assaulted and injured. Torrence's version of the incident reflects the clearly drawn boundaries of each prison official's duties and authority. Each defendant apparently acted within the bounds of his or her duties and authority, although perhaps could have been more proactive or reacted more quickly than he or she did. However, it is not up to this court to judge the effectiveness or efficiency of defendants' job performances, if those performances did not violate Torrence's rights. Because the facts undisputedly show that defendants performed their duties properly, at best, and negligently, at worst, this court cannot find that defendants acted with intent to cause harm to Torrence, or with deliberate indifference for or even recklessness towards Torrence's safety.

■ Torrence, in his response to defendants' motion for summary judgment, raises one last issue that warrants mention. Torrence alleges that Hughes and/or Davidson wrote a letter to Major Cartwright informing him that they would "kick someone's ass" if they were not transferred out of Joliet. Torrence has not seen this letter, but asks the court to issue a subpoena for it. The court finds it unnecessary to do so because even if this letter exists and states what Torrence avers, it does not make defendants' actions deliberately indifferent or reckless.

First, the letter allegedly was directed to Major Cartwright, who is not a defendant. Torrence has not alleged that any of the defendants were aware of the letter, and there is absolutely no evidence before the court that shows that any of defendants knew of Hughes' or Davidson's plans. Thus, even if Major Cartwright had knowledge of Hughes' and Davidson's threats, that knowledge cannot be imputed to defendants to establish that they were deliberately indifferent to Torrence's safety.

Second, even if defendants knew of the letter, the letter allegedly stated only that Hughes and Davidson would "kick *someone's* ass" if they were not transferred out of Jol-

iet. Torrence does not allege that the letter stated that Hughes and Davidson would target Torrence specifically. Thus, the letter fails to establish that defendants had "actual knowledge of impending harm" to Torrence such that their failure to prevent harm to Torrence constituted a "conscious, culpable refusal to prevent the harm" that came to him. *Duane,* 959 F.2d at 676 (quoting *Franzen,* 780 F.2d at 653).

Third, Torrence has neither alleged nor shown that defendants put and kept him in the yard so Hughes and Davidson would assault and injure him. "A state 'intends' a consequence when it acts *because of* that effect; when it acts *in spite of* an effect·it does not intend that effect." *McGill,* 944 F.2d at 348. In *McGill,* the court found that defendants could not be held liable for injuries a prisoner received at the hands of a prison gang, even though the prisoner had told defendants that he would be in danger of gang retribution if defendants transferred him to another prison. *Id.* at 346, 350. The court found that defendants had approved the prisoner's transfer and put him in a special unit in spite of, rather than because of, their knowledge of the potential danger that he would be in. *Id.* at 350. Thus, defendants were entitled to judgment as a matter of law on the prisoner's complaint alleging that defendants violated the prisoner's Eighth Amendment rights. *Id.*

Similarly, in the present case, Torrence has not set forth any specific facts that would indicate that defendants took the actions that they did because they knew that Hughes and Davidson would attack Torrence. Therefore, under *McGill,* defendants did not act with intent to cause Torrence harm, or with deliberate indifference for or recklessness towards Torrence's safety.

Accordingly, the court concludes that defendants did not violate Torrence's Eighth Amendment right to be free from cruel and unusual punishment by failing better to protect Torrence.

### C. *Qualified immunity*

Defendants also contend that they are immune from damages and suit under the doctrine of qualified immunity. While the court's foregoing conclusion disposes of defendants' motion, the court briefly will address defendants' qualified immunity argument.

Government officials performing discretionary functions generally are shielded from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court already has found that defendants' actions did not violate the Eighth Amendment's prohibition of cruel and unusual punishment. Moreover, Torrence has not alleged, and the court has not found, that any other of Torrence's constitutional or statutory rights were violated.

Accordingly, defendants are protected from liability for Torrence's injuries by the doctrine of qualified immunity.

### III. *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment is granted.